PEOPLE *v.* SAWICKI
PEOPLE *v.* TOBRASKY

1. Criminal Law—Right to Counsel—Appointed Counsel—Dismissal.

Judge's written response to defendants that he would dismiss their court-appointed counsel, if they so chose, but that they were to be aware that no other counsel would be appointed for them and that they would be required to obtain their own attorney, did not effectively deprive them of the assistance of counsel in the constitutional sense where no basis was shown to remove the appointed attorney, outside some conclusionary claims that appointed counsel did not respect communications from their families and friends, causing defendants to "suspect" that counsel did not have their interests "at heart".

2. Criminal Law—Right to Counsel—Appointed Counsel—Dismissal—In Propria Persona—Appearance.

Once all constitutional, statutory, and court rule requirements regarding appointment of counsel for an indigent defendant in a criminal case has been observed, the defendant cannot, after dismissing his appointed attorney, claim on the day of trial that he has a right to proceed *in propria persona* and that he should have additional time to prepare his own defense.

3. Burglary—Larceny—Safecracking—Unoccupied Building.

An assault or a putting in fear is not a necessary ingredient of the offense of attempting to break, burn, blow up or otherwise injure or destroy any safe with intent to commit larceny or any felony, nor must the building in which the safe reposes be occupied at the time (MCLA § 750.531).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 316, 321.
[2] 21 Am Jur 2d, Criminal Law §§ 310, 321.
[3] 13 Am Jur 2d, Burglary §§ 2, 4.
[4] 21 Am Jur 2d, Criminal Law § 449.

4. CRIMINAL LAW — EVIDENCE — EXHIBITS — PRELIMINARY EXAMINA-
   TION — FAILURE TO INTRODUCE.
   The prosecution may choose not to introduce a certain exhibit
   at the preliminary examination and still be entitled to intro-
   duce it at trial because it has fulfilled its responsibility at
   the stage of preliminary examination if it chooses to introduce
   only that quantum of proof sufficient to establish probable
   cause and whatever else it may be able to introduce at trial
   is not barred.

Appeal from Macomb, Alton H. Noe, J. Submit-
ted Division 2 May 7, 1971, at Lansing. (Docket
Nos. 8292, 8293.) Decided June 21, 1971. Leave to
appeal denied, 386 Mich 770.

Chester A. Sawicki and Heinrich Tobrasky were
convicted of attempted safebreaking with intent to
commit larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Der-
engoski,* Solicitor General, *George N. Parris,* Prose-
cuting Attorney, *Thaddeus F. Hamera,* Chief Ap-
pellate Lawyer, and *Stephen F. Osinski,* Assistant
Prosecuting Attorney, for the people.

*Thomas McDonald,* for defendants on appeal.

Before: McGREGOR, P. J., and BRONSON and
O'HARA,* JJ.

O'HARA, J. This is an appeal of right from a jury
verdict of guilty in a criminal prosecution for an
offense which is defined as follows:

"Any person who, with intent to commit the crime
of larceny, or any felony  *  *  *  shall attempt to
break, burn, blow up or otherwise injure or destroy

---

* Former Supreme Court Justice, sitting on the Court of Appeals
by assignment pursuant to Const 1963, art 6, § 23 as amended in
1968.

any safe  *  *  *  shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years."

So that there be no misunderstanding of one of the claims of error, we set out the statute verbatim, as opposed to the quoted excerpt with omitted words replaced by asterisks.

"Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, or shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years."[1]

The circumstances attending the arrest of defendants must be recited also in order that certain other allegations of error may be understood.

At approximately 3:21 a. m., Sunday, January 26, 1969, a burglar alarm in the city treasurer's office in Sterling Heights sounded. City police officers were immediately dispatched to the city hall.

On arrival, after entry to the building, they went to the treasurer's office. The door was ajar. The

---

[1] MCLA § 750.531 (Stat Ann 1954 Rev § 28.799).

defendants were arrested in the treasurer's office. The safe, as that word is used in the quoted statute, was tipped on its side. A top covering had been removed and certain insulating material was scattered around the floor. The following items, which it may be safely assumed are not normally kept in this business office, were on the floor near the safe; a crowbar, a sledge hammer, a metal punch (sometimes called a "drifter pin"), red rubber gloves and brown cotton gloves. Perhaps the foregoing items might have been forgetfully left there by a careless employee or even one who had come earlier to transact legitimate business there. However, it would seem that there is at least a fact question as to whether they had not been brought in by the two nocturnal visitors.

The record contains testimony which, if believed by the jury, would establish that at the close of the preceding business day the office was left in a neat, tidy condition—the safe locked, the other door to the building locked, the door to the involved office closed, and the burglar alarm activated.

The defendants were immediately arrested, advised of all their constitutional safeguards, and jailed. Thereafter, the process of the criminal law proceeded apace. Defendants were arraigned on the warrant which had been issued charging them with attempting to break or otherwise injure a safe with intent to commit larceny. Bail was set at $15,000. It was not furnished. Defendants were reconfined. A preliminary examination was set at which defendants were not represented by counsel. They were bound over to the circuit court for trial. At this arraignment, they stood mute. A plea of not guilty was entered for them by the court, and counsel for them was appointed as constitutionally required. One of the first things defense counsel did was to obtain agreement by the prosecuting attorney

that a new preliminary examination be held with defendants represented by counsel. This renders academic any discussion of *Coleman* v. *Alabama* (1970), 399 US 1 (90 S Ct 1999, 26 L Ed 2d 387) and the "critical state" issue.

In the interim between their circuit court arraignment and the date of trial, defendants sent to the trial judge a writing which they entitled "notice of dismissal" of their appointed counsel. Defendants complain that, because the trial judge responded to their "notice of dismissal" by writing them that he would dismiss appointed counsel if they so chose but they were to be "aware that no other counsel will be appointed for you and you will be required to obtain your own counsel", they were effectively deprived of the assistance of counsel in the constitutional sense. Outside some conclusionary claims that appointed counsel did not respect communications from defendants' families and friends and that this caused them to "suspect" that counsel did not have their interest "at heart" there was no basis shown to remove the appointed attorney. The trial judge properly disposed of the request.

There were further communications from defendants to the trial judge indicating in substance that defendants were trying to get their own counsel; that if they had been admitted to bail in the first instance they could have been working and paid for their own retained attorney. Perhaps so. We would have to rewrite the whole code of criminal procedure to grant relief on this assignment of error. We are unable to do so.

Next, the defendants complain of the inadequacy of their representation at their second preliminary examination, specifying failure to raise defenses and sundry other complaints. We discussed this ques-

tion of adequacy of representation in the constitutional sense at length in *People* v. *Lawrence* (1971), 32 Mich App 591. We perceive no basis here for finding a lack of adequate representation.

Next, the defendants complained that they had no access to a law library to prepare certain motions because they were in maximum security while in prison. They deny having received the documents they sought by letter, and they contend that they could not therefore "conduct a trial in proper person." As to this claim, the trial judge held:

"*The Court:* You wrote to the court. The court advised you that you would have no further choice, that Mr. Towner was appointed for you, if you did not want to go with Mr. Towner you would have to proceed on your own   *   *   * .   This is what you were told, isn't that right?

"*Defendant Sawicki:* In a letter, yes, I was advised that."

We fail to see what the trial judge was supposed to have done. Counsel had been afforded and rejected by defendants. They were advised to obtain private counsel if they chose. It would be impossible to control any criminal docket if on the day set for trial defendants claimed a right to proceed *in propria persona*, after having discharged their appointed attorney, and then were granted additional time to prepare their own defenses. All constitutional, statutory, and rule requirements as to appointment of counsel were observed in this case. There was no error.

Defendants also contend that because the building was "unoccupied" at the time of arrest, they could not have made an "assault" or "put anyone in fear" in connection with their attempt to break open the safe. It seems to be their position that either an

"assault" or "putting in fear" is a necessary ingredient of the offense charged. We do not so read the statute. To do so would make fair game of all safes in Michigan located in buildings, which at the time of the attempt to break or injure the safe, were unoccupied. We can hardly conclude this was the legislative intent.

Additionally, defendants claim the jury made inferences or findings not supported by evidence. We think the direct evidence of defendants' complicity in the offense was sufficient to sustain the verdict without any inferences.

It is also claimed that because the people chose not to introduce a certain exhibit at the preliminary examination, it could not be introduced on trial. We know of no such rule of law. If the people chose to introduce only that quantum of proof sufficient to establish probable cause, they fulfilled their responsibility at that procedural stage. Whatever else they may be able to introduce on trial is not barred.

All in all, a reading of the record establishes that defendants were apprehended in the commission of a felony. They were afforded counsel. They dismissed him. They chose to proceed *in propria persona* when the trial judge properly declined to appoint other counsel. They were convicted by a jury under a charge by the court in which we find no reversible error. We find no substance in any of the claimed errors.

The conviction is affirmed.

All concurred.