PEOPLE v FERGUSON

PEOPLE v SIMMONS

1. CRIMINAL LAW—SAFE ROBBERY—CONSTITUTIONAL LAW.

The safe robbing statute is not unconstitutionally vague and ambiguous (MCLA 750.531)

2. CRIMINAL LAW—STATUTES—SAFE ROBBERY.

Neither an "assault" nor a "putting in fear" is a necessary element of the offense of safe robbery (MCLA 750.531).

3. STATUTES—CONSTRUCTION—CATCH LINES.

The catch line heading of any section of the statutes that follows the act section number shall in no way be deemed to be a part of the section of the statute or be used to construe the section more broadly or narrowly than the text of the section would indicate, but shall be deemed to be inserted for purposes of convenience to persons using publications of the statutes (MCLA 8.4b).

4. STATUTES—CONSTITUTIONAL LAW—TITLES TO ACTS.

The safe robbery statute is not unconstitutional as embracing an object not expressed in the title to the Penal Code (Const 1963, art 4, § 24; 1931 PA 328; MCLA 750.531).

5. CRIMINAL LAW—SAFE ROBBERY—BURGLARY WITH EXPLOSIVES—DUE PROCESS.

It was not a denial of due process to charge defendant under the "bank, safe and vault robbery" statute rather than the "burglary with explosives" statute where defendant could have been charged under the "burglary with explosives" statute once he broke and entered carrying dynamite, but under the facts he proceeded to attempt to open a safe and to commit acts which brought him within the authority of the "bank, safe and vault robbery" statute (MCLA 750.112, 750.531).

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 16 Am Jur 2d, Constitutional Law § 552.
[6] 17 Am Jur 2d, Continuance §§ 34–37.

6. CRIMINAL LAW—CONTINUANCE—SUBSTITUTION OF COUNSEL.

> The trial court abused its discretion in failing to allow a continuance for the substitution of counsel where (1) defendant was asserting a constitutional right—the right to assistance of counsel; (2) he had a legitimate reason for asserting the right—he was unable to consult with his appointed counsel and therefore unable to prepare adequately; (3) he was not guilty of negligence—his trial date was advanced 20 days and he was notified of the change by his bondsman the evening before the trial; and (4) there was no evidence of any attempt by him to delay proceedings prior to trial—the motion on the day of trial could not be considered insincere or dilatory in nature under the facts of the case.

Appeal from Livingston, Paul R. Mahinske, J. Submitted Division 2 December 14, 1972, at Lansing. (Docket Nos. 12762, 12763.) Decided April 23, 1973.

Donald Ferguson and Robert A. Simmons were convicted of breaking and entering, safe robbery, and possession of burglary tools. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas Kizer, Jr.,* Prosecuting Attorney, for the people.

*James R. Neuhard,* Assistant State Appellate Defender, for defendants.

Before: FITZGERALD, P. J., and MCGREGOR and TARGONSKI,* JJ.

FITZGERALD, P. J. Defendants Ferguson and Simmons were arrested at approximately midnight April 4, 1971, by the Michigan State Police inside a supermarket in Brighton. Investigating officers found several holes drilled into the safe, beside

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

which defendants were crouched. In a shopping basket next to the safe were found two sticks of dynamite, a length of fuse, and blasting caps. Other tools were found strewn in the area of the safe. Defendants were charged in a three-count information with (1) breaking and entering,[1] (2) safe robbery,[2] and (3) possession of burglary tools,[3] were tried on all three counts July 8 and 9, 1971, before a jury, and found guilty on all three counts.

On the first day of trial, defendants' appointed counsel requested a continuance be granted so that they could confer with and help prepare recently-retained counsel. The court refused to grant the continuance. No other continuances prior to trial had been requested. Defendants requested to telephone their new lawyer and the court granted him 20 minutes in which to get to the courthouse to confer with defendants. He indicated he had only been contacted that morning about representing the defendants and further expressed his willingness to conduct the defense, but only if present counsel were discharged and he was given time to prepare. The trial court refused the motion for continuance and the trial began.

On appeal, defendants raise two issues relating to procedure and one dealing with the denied continuance for the purpose of securing a new attorney.

Defendants argue that MCLA 750.531; MSA 28.799, "bank, safe and vault robbery" is vague so as to give insufficient notice of its elements and embraces more than one object, expressed in its title.

The prosecution argues that the statute em-

---

[1] MCLA 750.110; MSA 28.305
[2] MCLA 750.531; MSA 28.799
[3] MCLA 750.116; MSA 28.311

braces but one subject which is clearly expressed in its title and that the legislative purpose was to protect structures intentionally constructed to pro-tect money, bonds, and other valuables.

MCLA 750.531; MSA 28.799, bank, safe and vault robbery, reads:

"Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bond or other valuables, or shall by intimidation, fear or threats compel, or at-tempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, or shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place, shall, whether he succeeds or fails in the perpe-tration of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years."

This Court has on several occasions dealt with the question here raised. In *People v Grabowski,* 15 Mich App 12 (1968), responding to the argu-ment that the safe robbing statute is unconstitu-tionally vague and ambiguous, this Court held that the statute was constitutional.

Defendants further contend that the charge on which they were actually informed and ultimately convicted was inconsistent with the crime for which they were in fact charged. The defendants at all times were charged under MCLA 750.531; MSA 28.799, "bank, safe and vault robbery". Count 2 of the information against defendants reads:

"With intent to commit larceny, attempted to break, burn, blow up or otherwise injure or destroy the safe, vault or other depository in the building located at the above location, contrary to § 750.531, CL 1948."

This statute has in the past been subject to attack based on what elements are necessary in order to obtain a conviction under MCLA 750.531; MSA 28.799. In *People v Morgan,* 13 Mich App 256, 258 (1968), this Court held:

"The information stated in part that defendant:
" 'With intent to commit the crime of larceny did attempt to break, burn, blow up or otherwise injure or destroy a safe, vault or other depository of money, bonds, or other valuables belonging to Nall Candler doing business as Great Lakes Industries, in a certain building, to wit: a dwelling situated at 731 Glover, in the said City of Detroit.'
"The statutory language is that any attempt to damage or injure a safe with intent to commit the crime of larceny is a felony. There need be no showing of assault to prove violation of that section of the statute of which defendant was accused and his argument that an assault was a necessary element of the crime is erroneous. The information properly set out the charges against him."

The information under which the defendant in the *Morgan* case was convicted is strikingly similar to the information for Count 2 in the instant case set out above.

The same argument as is raised here, and which was raised in *Morgan,* again faced the Court in *People v Sawicki,* 34 Mich App 240, 245–246 (1971). In response to the argument that the prosecution must prove the elements of common-law robbery, this Court held:

"Defendants also contend that because the building was 'unoccupied' at the time of [the] arrest, they could

not have made an 'assault' or 'put anyone in fear' in connection with their attempt to break open the safe. It seems to be their position that either an 'assault' or 'putting in fear' is a necessary ingredient of the offense charged. We do not so read the statute. To do so would make fair game of all safes in Michigan located in the buildings, which at the time of the attempt to break or injure the safe, were unoccupied. We can hardly conclude this was the legislative intent."

Based upon the above decisions, we concur with the trial court's ruling that proofs required under MCLA 750.531; MSA 28.799, were satisfied.

Defendants' contention that the "bank, safe and vault robbery" statute violates Const 1963, art 4, § 24, is without merit. The words here objected to by defendants are not the title of the act, but are considered the catch line of the section. MCLA 8.4b; MSA 2.215 states regarding catch lines:

"The catch line heading of any section of the statutes that follows the act section number shall in no way be deemed to be a part of the section or the statute or be used to construe the section more broadly or narrowly than the text of the section would indicate, but shall be deemed to be inserted for purposes of convenience to persons using publications of the statutes."

The title to which this particular section, MCLA 750.531; MSA 28.799, corresponds is the title to the Michigan Penal Code which reads:

"AN ACT to revise, consolidate, codify and add to the statutes relating to crimes; to define crimes and prescribe the penalties therefor; to provide for the competency of evidence at the trial of persons accused of crime; to provide immunity from prosecution for certain witnesses appearing at such trials; and to repeal certain acts and parts of acts inconsistent with or contravening any of the provisions of this act."

Looking at MCLA 750.531; MSA 28.799, it is clear that the statute does not embrace an object not expressed in its title.

Defendants next ask whether they were charged and convicted under the wrong statute thereby denying their constitutional right to due process.

Defendants contend that due process required the prosecutor to charge them under the "burglary with explosives" statute, MCLA 750.112; MSA 28.307. They assert that the "burglary with explosives" statute more accurately describes their activities on the night of the alleged offense. The "burglary with explosives" statute reads as follows:

"Any person who enters any building, and for the purpose of committing any crime therein, uses or attempts to use nitro-glycerine, dynamite, gunpowder or any other high explosive, shall be guilty of a felony, punishable by imprisonment in the state prison not less that 15 years nor more than 30 years."

Whether or not appellants were denied due process by being charged under the "bank, safe and vault robbery" statute as opposed to the "burglary with explosives" statute depends on whether they in fact cover the same subject, and the latter "burglary with explosives" is an exception to the "bank, safe and vault robbery" statute.

The "burglary with explosives" statute was interpreted in *People v Mire,* 173 Mich 357, 361 (1912). The Michigan Supreme Court outlined the purpose of this statute:

"The most serious part of the crime defined in this statute, and the especial depravity which is to be punished, is manifestly the use of high explosives in a building as an agency to facilitate the perpetration of a felony, a branch of criminal activity regarded with

increasing disfavor since the time of Guy Fawkes and steadily becoming more dangerous, more easily resorted to, a greater expense to organized society and more fear-inspiring with the development in kinds, strength, facilities in handling and use of those deadly agencies."

As the Supreme Court points out, the "burglary with explosives" statute is aimed at any illegal use of high explosives with the attendant known, as well as unknown, results.

Looking at the "bank, safe and vault robbery" statute, there is a different emphasis. Although any attempt to "blow up" any bank, safe or vault is set out in the statute, the main thrust of the statute is not on the use of explosives. The "safe robbing" statute is aimed at any threat to the security of valuables.

From the facts of this particular case, defendants could have been charged under the "burglary with explosives" statute once they broke and entered carrying the dynamite. Having proceeded to attempt to open the safe that evening, they committed acts bringing them within the authority of the "bank, safe and vault robbery" statute.

Finally, defendants say the trial court abused its discretion when it refused to grant their proposed retained counsel adequate time to prepare their case in a situation where defendants and retained counsel had only recently become aware of the trial date, thus forcing them against their will to proceed with court-appointed counsel.

The people argue that it was proper for the trial court to deny defendants' motion for a continuance for substitution of retained counsel for appointed counsel, since such motion was only made for the purpose of delay. They claim there was no real evidence that retained counsel had been or would be retained and that the denial of the motion for a

continuance was within the discretion of the trial court, and did not amount to an abuse of discretion.

The facts appear to show that on the day of trial, defendants sought to substitute retained counsel for appointed counsel and made a motion for a continuance so that retained counsel could adequately prepare. Defendants attack the trial court's denial of that motion, claiming it was an abuse of discretion and violation of the standards set down in *People v Charles O. Williams,* 386 Mich 565, 577–578 (1972). The Michigan Supreme Court in *Williams* found:

"Thus, the desire of the trial courts to expedite court dockets is not a sufficient reason to deny an otherwise proper request for a continuance.

"The trial judge indicated that the case had been delayed on several previous occasions and that she desired to avoid further delay. If this in fact were true, and if the delay had been at defendant's insistence, then this would be an important factor to consider in determining whether to grant a continuance. But, the record does not substantiate the trial court's comment in this regard. The docket journal shows that this cause was adjourned on two separate occasions with no reason given in either instance. The second adjournment occurred after defendant filed a motion to quash the information and it appears that the court denied the motion and set the trial date of November 8, 1967, at that time. Hence, we have an adjournment and no evidence that it was at defendant's request. The court further stated that it felt this was merely a delaying tactic and that it was concerned about the witnesses who were present for trial. Both of these matters are, of course, legitimate factors to consider in ruling on defendant's motion. However, there is no evidence in the record before us that this was a delaying tactic, and a great deal of evidence that it was not for purposes of delay."

The Michigan Supreme Court in *Williams* relied

on the following facts in determining that the trial judge abused his discretion in failing to allow a continuance for the substitution of counsel:

"In view of the facts that: 1) defendant was asserting a constitutional right—the right to counsel; 2) he had a legitimate reason for asserting this right—an irreconcilable *bona fide* dispute with his attorney over whether to call his alibi witnesses; 3) he was not guilty of negligence; and 4) the trial court was incorrect in stating that defendant had caused the trial to be adjourned several times—we hold that the trial court abused its discretion in denying defendant's counsel's motion to withdraw and in preventing defendant from changing attorneys and granting a continuance in this case.
"Reversed and remanded for new trial."

The Supreme Court also indicated that each case must turn on its own individual facts in determining whether a denial of a continuance was proper. The facts relied upon and outlined in the *Williams* case are relevant to any decision on the propriety of the denial of a continuance in the instant case.

1. *Whether the defendant was asserting a constitutional right?* Just as in *Williams,* appellants here were asserting the right and desire to substitute counsel. The right to assistance of counsel is clearly a constitutional right.

2. *Was there a legitimate reason for asserting the right?* In *Williams* defendant complained that alibi witnesses had never been found or interviewed by his attorney, nor had his attorney conferred with him. Appellants' complaints regarding their court-appointed attorney were set out by defendant Simmons:

"*Mr. Simmons:* I have been trying to get in touch with Mr. Cox, but evidentially he didn't get the message. I was trying to set up the appointment for the last two weeks, and I called the office and the house and

sometimes the office girl answered, but I think Mr. Cox was up north part of the time, and there was no phone up there, and I didn't know we had the co-counsel appointed until this morning, and I didn't have any notice that we were going to trial until last night when my bondsman called me. I had no official notice we were going to trial, and he said 'I think we are going to trial in the morning' and then Mr. Cox called my wife yesterday, and that is the first I had the chance to confer with this attorney since I been on bond."

Defendant is clearly arguing that he has been unable to consult with his appointed attorney, therefore unable to prepare adequately. The only difference between appellants' argument here and that raised in *Williams* is that in addition to arguing that he had not consulted with his attorney, Williams also argued the attorney failed to contact alibi witnesses. Both arguments are concerned with the proper preparation of the defense in each case. Here, there was also an irreconcilable bona fide dispute over their attorney's failure to consult with them in preparing their defense. The fact that defendants expressed their satisfaction with their court-appointed attorney at the arraignment is of little merit since their attorney-client relationship had just begun. The dispute here in question could not have become apparent until they had had time to confer and hopefully work together.

3. *Were appellants guilty of negligence?* An affidavit of Frances Russ, assignment clerk for the trial judge, states that this matter had been set for trial on July 29, 1971. This trial date was then reset for July 9, 1971, and Frances Russ swears to have informed appellants' court-appointed attorney of this change on June 16, 1971. Appellants contend they were not informed of the new trial date until the night before the trial and at that

time by Simmons' bail bondsman. Taking the above as true, and also that Simmons, as he testified, had been attempting to get in touch with Mr. Cox, defendants could not be considered negligent in failing to have acquired retained counsel.

4. *Had the appellants caused previous adjournments and delays?* From the lower court record, calendar entries, and the prosecutor's brief on appeal, there is no indication that defendants sought any adjournments or delays prior to the date of trial. The prosecutor in his brief claims defendants made " * * * two separate motions for continuance, each motion being inconsistent with the other and thereby exposing an insincerity in seeking delay". The two motions referred to by the prosecutor were to first confer with their appointed counsel and second, to allow preparation by the counsel they hoped to retain. If it is true that their court-appointed counsel had not conferred with appellants prior to the trial date, a motion for continuance in order to confer with him is reasonable and understandable. Once Mr. Schoemer (counsel they proposed to retain) arrived on the scene, it was also reasonable for defendants to seek a continuance in order to confer with Mr. Schoemer. Mr. Schoemer later indicated the only reason he didn't take the case:

*"Mr. Schoemer:* For the record, I would like to indicate if I had the time, and that is the only reason I am turning it down, I would in good faith try it today."

There is no evidence of any attempt by defendants to delay proceedings prior to trial, nor could the motion on the day of trial be considered insincere or dilatory in nature.

Based on the above considerations, the action of refusing the continuance was an abuse of discre-

tion on the part of the trial court. The refusal to grant a continuance to substitute counsel was in direct conflict with the standard set out in *People v Charles O Williams, supra.*

We are constrained to observe that had the trial taken place on July 29, the date originally set, and not on July 9, as it did, the result here might have been different. We do not intend to condone delay tactics by defendants constantly seeking new representation. However, the fact of a 20-day advancement of the trial date and the strong indication that defendants had not been adequately notified of this moved-up date leads us to the conclusion herein reached.

Reversed and remanded for further proceedings consonant with this opinion.

All concurred.