## PEOPLE v SHUEY

1. APPEAL AND ERROR—CRIMINAL LAW—CONTINUANCES—ATTORNEY AND CLIENT—MOTIONS—RIGHT TO COUNSEL—SUBSTITUTION OF COUNSEL—DENIAL—DISCRETION—TEST—BONA-FIDE DISPUTE— DEFENDANT'S NEGLIGENCE.

Motions for adjournments and requests for continuances are matters for the sound discretion of a trial court, and the exercise of that discretion in denying a defendant's motion for withdrawal of appointed counsel and substitution of retained counsel is tested on appeal by determining (1) whether the defendant was asserting a constitutional right, (2) whether there was a legitimate reason for asserting the right, (3) whether the defendant was negligent in asserting the right, and (4) whether the defendant had caused previous adjournments and delays; the only determination of whether the trial court abused its discretion turns on whether there was a bona fide dispute between the defendant and his counsel and whether defendant's motion was timely brought and not a result of his negligence.

2. CRIMINAL LAW—SENTENCING—PRIOR CONVICTIONS—RIGHT TO COUNSEL—TUCKER HEARING—PRIMA FACIE PROOFS—EVIDENCE OF REQUEST—BURDEN OF PROOF—PROSECUTORS.

A defendant who asserts that in a previous conviction his right to counsel was violated and thus that previous conviction could not properly be considered in sentencing, in order to invoke a *Tucker* hearing to determine whether he was adequately represented by counsel or waived that right, must (1) present prima facie proofs such as a docket entry showing the absence of counsel or a transcript evidencing the same, or (2) present evidence that he has requested such records from the sentencing court and it has failed to reply or has refused to furnish copies of records within a reasonable period of time (4 weeks);

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 84.
[2] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 9.
What constitutes former "conviction" within statute enhancing penalty for second or subsequent offense. 5 ALR2d 1080.

upon presentation of either (1) or (2), the burden will then be upon the prosecutor to establish the constitutional validity of the prior conviction.

Appeal from Berrien, Julian E. Hughes, J. Submitted June 3, 1975, at Grand Rapids. (Docket No. 20626.) Decided August 26, 1975.

Dewey Shuey was convicted of armed robbery. Defendant appeals. Affirmed but remanded for further hearing and resentencing, if necessary.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John Smietanka,* Prosecuting Attorney, and *Robert U. McDowell,* Assistant Prosecuting Attorney, for the people.

*F. Michael Schuck, III,* Assistant State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, J. Defendant, Dewey Shuey, was convicted of robbery armed, MCLA 750.529; MSA 28.797, before a jury and sentenced by the trial court to a term of from 15 to 30 years in prison. Defendant appeals as of right.

On June 28, 1971, at approximately 12:45 a.m. a food market in Niles, Michigan, was robbed. Daniel Becker, the night manager of the store, and his fiance, Sandy Thompson, had just closed up the store when a young black male approached them and ordered them back into the store at gunpoint. After the robber had forced Becker to open the safe and had taken money found there, he ordered Becker to open the front door and let an older black man in. The two robbers then tied up Becker and Thompson and fled.

The following day, Becker and Thompson went to the South Bend, Indiana, Police Department. There they went through a number of mug shots in an attempt to identify the two robbers. Finding no success, Becker described the older robber to a police officer. The officer "thought he knew who it was". He left Becker and Thompson and returned with three photographs. Becker selected one of the photographs and identified it as the older man involved in the robbery. The photograph Becker had selected was of the defendant. On the same day a warrant was obtained and the information concerning the defendant was placed on the Law Enforcement Information Network.

Some 2-1/2 years later the defendant was arrested in South Bend, Indiana, and subsequently extradited to Michigan for trial. At the preliminary examination, the defendant, who was sitting at the defense table attired in jail clothing, was identified as the older robber by Becker. Thompson, although present at the preliminary examination, did not testify.

Before trial the defense made several motions. The defense first moved to quash the information and for a hearing on the issue of whether or not the photographic showup made to the eyewitnesses was improperly suggestive. A hearing was held on February 11, 1974, and the motion to quash was denied. At this hearing the defendant, himself, asked that another appointed attorney be substituted for his then present appointed counsel. This motion was also denied, for the reason that his appointed attorney was highly competent. The defense also moved to quash the information, alleging that the defendant's right to a speedy trial was denied. An evidentiary hearing was held on February 19, 1974, and this motion was also de-

nied, for the reason that the delay was attributed to defendant's being out of the state and going under alias names. At this hearing the defense renewed its motion for the substitution of counsel and a continuance, which was denied.

At trial, on February 21, 1974, the defendant renewed his motion for a continuance, for the substitution of counsel and to look for alibi witnesses. It was again denied. The following took place at this juncture of the proceedings:

*"The Court:* All right. So the record on both of these matters is completely covered on this, number one, the court—the record will indicate that when Mr. Dewey was in court on a motion here at least a week or so ago that the attorney who had been appointed asked the court to ask that Mr. Dewey cooperate with him and give him the name of these witnesses so that they could be located and the court did instruct them as such on it and the names have apparently been withheld from his own attorney for some reason unknown to this court. Number two, it is to be noted that Mr. Shuey has had— he has been under arrest since some time in November, which has been approximately three months now today, and as I say, apparently he never bothered to disclose these witnesses or anything else to his attorney and they were not disclosed to the best of my knowledge until last Tuesday when Mr. Shuey—or Mr. Dewey, I beg your pardon, was in court for another motion.

"Furthermore, the first time that this court has ever received any request for an adjournment or continuance was Monday, two days before this case was set for trial. In spite of the fact—well, I cannot tell you the exact date that the matter was scheduled, but it appears it was scheduled better than three weeks ago, because of the fact that the return of the notice of trial was received back in court on the 29th day of January, which meant that the notice went out before that.

"I would like to further have the record show that I did receive a call from Reverend DeFrance last night at exactly 8:55 p.m., in which he indicated his interest in

the case. He indicated that there was an attorney who might—or would consider representing Mr. Dewey if retained. This was Attorney Logan from Grand Rapids, who is a fine attorney. As a matter of fact, has appeared in this court on at least one other occasion before me in another case. The court advised Reverend DeFrance that any adjournment was highly unlikely because of the lateness, it being then twelve hours and thirty-five minutes before this case was going to trial; the witnesses were subpoenaed, the jury was being called in; and furthermore, to be perfectly candid, the basis of the fact that the court has X-number of days, which amounts to 180 to try cases and that these days must be used if the constitutional rights of a speedy trial is to be granted, not only to Mr. Dewey, but to the men that are over in the jail as well as the other side of the coin, the public has just as much interest in that speedy trial as does the defendant.

"In any case, Mr. DeFrance—and by the way, so that there is no question here, Mr. DeFrance has been a good friend of this judge for years, as all of the members of his family, as a matter of fact, and a man that I have great respect for, without any question. In any case, he told me that—I told him that I would talk to an attorney if he'd call. Mr. Logan did call me this morning at approximately 8:45 and he said that—he told me simply this: That if retained, if paid, then he would enter an appearance if an adjournment could be granted. Again, I pointed out to him the circumstances of the case and the fact that an adjournment could not be granted at this late date, nor would this court be inclined to. Mr. Logan advised that his interest—he advised that he would be interested if retained. Apparently the attorney fees—and there's no reason to put it on the record—would come from a third source, if there were. In any case, the court advised Mr. Logan that if there had been a request timely made this court would have considered it seriously. However, it could not consider it at this time. Mr. Logan said that it would be unusual in any case, certainly, for a court to adjourn one at this late time. Further, Mr. Logan advised that he had an interest in the case if he wished to retain him on an appellate level, as well as this level."

The defendant raises several issues on appeal, two of which are of merit and require determination.

I

*Did the trial court err in denying the defendant's motion for a continuance to substitute counsel and to locate alibi witnesses?*

In Michigan adjournments and requests for continuances are within the sound discretion of the trial court. *People v Rastall,* 20 Mich App 264; 174 NW2d 33 (1969), *People v Charles O Williams,* 26 Mich App 46; 181 NW2d 825 (1970), *reversed and remanded,* 386 Mich 565; 194 NW2d 337 (1972).

Whether the trial court properly ruled in denying the defense motion for the withdrawal of appointed counsel and the substitution of retained counsel under the circumstances in this case, we must determine. The guidelines of *People v Charles O Williams, supra,* are controlling. The court held in that case at 386 Mich 578; 194 NW2d 343:

"In view of the facts that: 1) defendant was asserting a constitutional right—the right to counsel; 2) he had a legitimate reason for asserting this right—an irreconcilable bona fide dispute with his attorney over whether to call his alibi witnesses; 3) he was not guilty of negligence; and 4) the trial court was incorrect in stating that defendant had caused the trial to be adjourned several times—we hold that the trial court abused its discretion in denying defendant's counsel's motion to withdraw and in preventing defendant from changing attorneys and granting a continuance in this case."

Following the example of *People v Ferguson,* 46 Mich App 331; 208 NW2d 647 (1973), we apply *seriatim* the fourfold test of *Williams.*

1. Whether the defendant was asserting a constitutional right? Here, as in *Williams* and *Ferguson,* the defendant was asserting his claimed right to substitute proposed retained counsel for appointed counsel. The right to the assistance of counsel was clearly protected by US Const, Am VI. We rule, however, that this right must be timely asserted.

2. Was there a legitimate reason for asserting the right? At the hearing on the motion to quash the following colloquy occurred:

*"The Court:* Why are you asking him to withdraw from the case?

*"Defendant:* Well, because on these motions here he tells me Friday that he knows what you are going to do; that I am not going to get the bond reduced. I am not going to get the information quashed or anything like that, and that's the reason why I wanted him to withdraw from the case. I am asking in here that the N.C.A.A.P. come to this case and I am asking the Civil Liberties coming, there are several constitutional violations on this case here."

The defendant in *People v Russell,* 47 Mich App 320, 324; 209 NW2d 476, 478 (1973), lodged the same sort of complaint against his appointed counsel. In that case the court held that this was not a bona fide dispute as required by the *Williams* case. In fact the court said, "we believe that an attorney has a duty to forthrightly and honestly inform his client as to the merits of his case".

3. Was the defendant guilty of negligence? The defendant first raised his motion for different counsel ten days before the scheduled trial. However, this motion was for another appointed counsel, not retained counsel. We also note that the first mention of retained counsel came just the night before the date set for trial—also, such

counsel had not been retained or paid. It is also clear that the defendant had some two months to retain counsel after he was brought to Berrien County for trial.

4. Had the defendant caused previous adjournments and delays? The record indicates no adjournments or delays other than the request of the defendant for continuance for the substitution of counsel and to locate alibi witnesses, which occurred two days before trial.

The determination of whether the trial court abused its discretion, turns on whether there was a bona fide dispute as required by the *Williams* case, and by whether the defendant's motion was timely brought and not a result of negligence.

We rule there was no bona fide dispute between defendant and his attorney and further that defendant had several months to locate his witnesses and to employ retained counsel, but failed to do so. We find no error as to this issue.

## II

*Whether the defendant is entitled to a hearing to determine whether improper convictions were used in determining the defendant's sentence?*

Defendant asserts that his presentence report contains convictions on March 19, 1926, in Joplin, Missouri, for counterfeiting and on November 18, 1928, in Waukegon, Illinois, for carrying a concealed weapon, and that the trial court considered these convictions. Because of the court's reliance on the 1926 felony conviction, at which defendant claims he was not represented by counsel, both *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972), and *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), require a hearing

at which the prosecution has the burden of proving that the defendant had counsel at the trial on the felony charge. Defendant also claims that this is true as to the misdemeanor charge considering the Supreme Court's decision in *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972).

*People v Moore* provides at 391 Mich pp 440–441; 216 NW2d pp 777–778:

"In the future, post-sentencing *Tucker* claims should be initially decided by the sentencing judge or his successor. He is in the best position to explore and decide the factual issues and, if necessary, the defendant can then be resentenced. The Court of Appeals may refrain from considering a *Tucker* claim until the sentencing court has had an opportunity to resolve it.

"To invoke a *Tucker* hearing, the defendant must (1) present prima facie proof that a previous conviction was violative of *Gideon [v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799; 93 ALR2d 733 (1963)], such as a docket entry showing the absence of counsel or a transcript evidencing the same; or (2) present evidence that he has requested such records from the sentencing court and it has failed to reply or has refused to furnish copies of records within a reasonable period of time, say four weeks. Upon such presentation, either (1) or (2), the burden will then be upon the prosecutor to establish the constitutional validity of the prior conviction. Thus, if the prosecutor contends that the defendant waived counsel, the burden will be on him to show affirmative record evidence of waiver."

It appears clear from Appendix B of the appellant's brief that records from the appropriate criminal jurisdictions were requested and that copies of the criminal record in question were not furnished. Although the language of *Moore* speaks of "refused" with reference to the failure to procure records, the inability of either of the jurisdictions

contacted in this case to produce criminal records has the same effect. Therefore, the defendant is entitled to a *Tucker* hearing, having complied with *People v Moore, supra.*

Affirmed and remanded for a *Tucker* hearing, and resentencing, if necessary.