PEOPLE v EDDINGTON

1. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—WAIVER OF
   COUNSEL—CONSTITUTIONAL LAW.

   A knowing, intelligent and voluntary waiver of the constitutional
   right to the assistance of counsel exists where a defendant is
   adequately informed of the dangers and potential serious conse-
   quences of self-representation, and then unequivocally declares
   a desire to proceed then and there as his own counsel.

2. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—WAIVER OF
   COUNSEL—CONSTITUTIONAL LAW—ADMINISTRATION OF COURT'S
   BUSINESS.

   A waiver of the constitutional right to assistance to counsel may
   be allowed where a trial judge informs the defendant of the
   dangers and potential consequences of self-representation, de-
   termines that the defendant's competence is sufficient to allow
   assertion of this constitutional right, and is satisfied that the
   administration of the court's business will not be disrupted or
   unduly inconvenienced.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—TRIAL—RIGHT TO COUNSEL
   —INDIGENT DEFENDANT—ATTORNEY AND CLIENT—SUBSTITUTION
   OF ATTORNEYS—JUDGE'S DISCRETION.

   A criminal defendant's right to the assistance of counsel is
   guaranteed by both the Federal and state constitutions; an
   indigent defendant is not constitutionally entitled to the attor-
   ney of his choice; however, he may become entitled to have his

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 316, 317.
[3] 21 Am Jur 2d, Criminal Law §§ 319, 321.
[4] 21 Am Jur 2d, Criminal Law §§ 253–255, 320.
[5] 17 Am Jur 2d, Continuance §§ 27–42.
[6] 21 Am Jur 2d, Criminal Law § 319.
[7] 21 Am Jur 2d, Criminal Law § 310.
[8] 21 Am Jur 2d, Criminal Law § 237.
[9] 81 Am Jur 2d, Witnesses § 99.
[10] 21 Am Jur 2d, Criminal Law § 432.
   77 Am Jur 2d, Venue § 49.
[11] 21 Am Jur 2d, Criminal Law §§ 521, 522.

assigned lawyer replaced upon a showing of adequate cause for a change in lawyers; a decision regarding substitution of appointed counsel is entrusted to the trial court's discretion, and the substitution should be granted upon a showing of good cause and if it would not unreasonably disrupt the judicial process (US Const, Am VI, Am XIV; Const 1963, art 1, § 20).

4. CRIMINAL LAW—CONSTITUTIONAL LAW—TRIAL—CONTINUANCES—JUDGE'S DISCRETION—DUE PROCESS.

A defendant may seek an adjournment after appointment of new counsel to insure effective representation and to allow a reasonable opportunity to prepare his case; the grant of this request is discretionary and the exercise of discretion must respect the crucial role that legal representation plays in the system of criminal justice, because a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality; there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process and the answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time a request is denied.

5. CRIMINAL LAW—TRIAL—CONTINUANCES—JUDGE'S DISCRETION—GUIDING CONSIDERATIONS.

The considerations which should guide the exercise of a trial court's discretion when faced with a request for a continuance in a criminal case are (1) the origin and nature of the right asserted, (2) the defendant's reasons for asserting that right, (3) the defendant's negligence or untimely assertion of the right, and (4) the extent to which previous delays or disruptions are attributable to the defendant.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—ASSISTANCE OF COUNSEL—PROTECTION OF CONSTITUTIONAL RIGHT.

The constitutional right to assistance of counsel has been jealously guarded by the courts and is of critical importance to any defendant in a criminal trial; therefore, whenever it is asserted, a trial court must take special care to insure that it is protected (US Const, Am VI, Am XIV; Const 1963, art 1, § 20).

7. CRIMINAL LAW—CONSTITUTIONAL LAW—TRIAL—ASSISTANCE OF COUNSEL—ATTORNEY AND CLIENT—SUBSTITUTION OF COUNSEL—DELAY—PROGRESS OF CASE.

A defendant is constitutionally entitled to proceed *in propria persona* without legal expertise, but also to withdraw from self-

representation upon a showing of a legitimate need to do so; the importance of the right to assistance of counsel mandates that the defendant be allowed to withdraw in favor of trained counsel if the substitution would not result in unwarranted disruption prejudicial to the orderly progress of the case.

8. CRIMINAL LAW—ASSISTANCE OF COUNSEL—CONTINUANCES—JUDGE'S DISCRETION—PREJUDICE—HARMLESS ERROR.

Denial of a defendant's request for a continuance to allow a new attorney the necessary time to prepare and proceed with his preliminary examination may result in an abuse of judicial discretion, but the abuse and any error resulting therefrom is harmless and does not merit reversal of the defendant's conviction where he fails to demonstrate prejudice, or at least reason to believe that his case was prejudiced by the denial.

9. WITNESSES—CRIMINAL LAW—PROSECUTING ATTORNEY AS WITNESS—COLLATERAL TESTIMONY—FAIR TRIAL.

The presence of a prosecuting attorney and his conversations with a defendant at the scene of a crime followed by his appearance as a witness and his testifying at trial does not deprive the defendant of a fair trial where the prosecutor's testimony dealt with matters collateral to the crime charged and where the testimony was elicited by the defense.

10. VENUE—CRIMINAL LAW—CHANGE OF VENUE—NOTORIETY AND PRETRIAL PUBLICITY—VOIR DIRE—PRIOR TRIALS—BIAS OR SENSATIONALISM—JUDGE'S DISCRETION—FAIR TRIAL.

Denial of a motion for a change of venue on the grounds of criminal notoriety and pretrial publicity is not an abuse of judicial discretion where both parties were provided an opportunity during voir dire to personally interrogate prospective jurors and did interrogate the jury panel extensively concerning pretrial publicity and notoriety from prior criminal involvement, and where defendant's trials on previous charges occurred at least five years before and the record does not support defendant's claims of bias or sensationalism which would preclude the possibility of a fair and impartial trial.

11. CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—PRODUCTION OF EVIDENCE—REASONABLE DILIGENCE.

Evidence is not newly discovered and will not support a motion for a new trial where such evidence is known to the defendant at the time of trial and could with reasonable diligence have been produced at trial.

Appeal from Saginaw, Joseph R. McDonald, J. Submitted December 14, 1976, at Lansing. (Docket No. 27325.) Decided August 8, 1977. Leave to appeal applied for.

William H. Eddington was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,* Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*Thick & Bush,* for defendant.

Before: J. H. GILLIS, P. J., and M. F. CAVANAGH and D. E. HOLBROOK, JR., JJ.

M. F. CAVANAGH, J. Defendant appeals as of right from his May 23, 1974, jury conviction of armed robbery, MCLA 750.529; MSA 28.797. On June 13, 1974, he was sentenced to life imprisonment.

On January 15, 1974, two men broke into and robbed at gunpoint the Heidelberg Inn, in Saginaw, Michigan. The police trapped the defendant inside the bar and apprehended him when he was overpowered by several bar patron-hostages. He was later charged with armed robbery and rape of one of the barmaid-hostages.[1]

## I

Defendant's first claim of error concerns his efforts to obtain counsel before and during his preliminary examination. On January 18, 1974, James Brisbois, who had previously represented

---

[1] The jury acquitted the defendant on the charge of rape of the barmaid.

the defendant on other criminal charges, was appointed defense counsel by circuit court. On January 25, 1974, defense counsel moved to adjourn the preliminary examination for one week because he had just returned from Mexico and needed more time to prepare. The district court granted the motion, set January 31, 1974, as the new examination date, and ordered the parties to bring all motions before that date.

On January 28, 1974, defense counsel moved to withdraw as counsel stating that he was unable "to summon up the requisite mental attitude", and that his practice was already overloaded. The defendant agreed with the reasons cited by his attorney, and asked that he be allowed an opportunity to retain new counsel or that the court appoint a new attorney. When questioned by the district court concerning further delays, the defendant replied that he thought that counsel could be substituted without further delays:

"THE COURT: And you realize that by a motion such as today and no matter what the outcome of this motion, it would be possible further delays in your right to a preliminary examination on the charges?

"MR. EDDINGTON: Not necessarily, I mean I can't foresee these if a Court appointed counsel is appointed today or tomorrow I feel that I still would have time to confer with the counsel before Thursday [January 31.] And if I'm allowed to use the telephone to get additional counsel I feel that I should be adequately represented if the attorney feel like he can represent me Thursday. But I feel like we would have a step towards it and stopping further delays 'cause I don't want no delays whatsoever."

The district court denied the motion on grounds that the district court lacked power to allow withdrawal of an attorney appointed by the circuit

court. The court declared that the preliminary
examination would be held on schedule, with Mr.
Brisbois as defense counsel.

For the next three days the defendant attempted
diligently to retain new defense counsel.[2] His ef-
forts were unsuccessful.

At the preliminary examination on January 31,
1974, the district court acknowledged receipt of a
letter from the defendant which declared the de-
fendant's intent to discharge James Brisbois and
to proceed in his own behalf. Upon the defendant's
acknowledgment that the letter was genuine and
reflected his present intentions,[3] the trial court

---

[2] The defendant attempted to prove at a hearing on his motion for a
new trial that he had attempted to retain counsel during this period.
The trial court erroneously refused to allow this testimony, claiming
that the defendant was restricted to the record of prior proceedings.
For the purposes of this appeal, we accept as true the defendant's
offers of proof at the new trial motion regarding these allegations.

[3] The following dialogue shows that the defendant was determined
to represent himself:

"THE COURT: And would you explain to me why you wish to
proceed in proper person.

"MR. EDDINGTON: The Court imposed counsel on Mr. James A.
Brisbois on me when I didn't want Mr. Brisbois.

"And we've discussed this previously about mental attitude and
(unintelligible) and I don't think Mr. Brisbois can represent me and
divorce himself from the previous issues and the present issues.

"THE COURT: Speak up. You're talking fairly low. Could you
speak up please.

"MR. EDDINGTON: I feel that he couldn't divorce himself from the
previous issues to cope with the present issues. And we're in total
disagreement about different things pertaining to this case. There are
things I wanted to do and things he wanted to do.

"And I felt like he couldn't represent me adequately. I'm not saying
he's incompetent in used in the grammatic sense, he's not competent
in a sense but competent in another sense. I don't want him for my
attorney on this.

"I'm aware according to law the Court cannot impose attorney on
me, especially when he does not want an attorney. There's no way
that he can help me when I would not divulge any information that
might be beneficial to my defense. He would be actually be working
on his own. So rather then get into something that would be a farce
I'd rather stop it now at it's origin and let him go and proceed in
form of proper person until I have got enough funds to acquire my
own attorney. I have one I tentatively used for advisory but I have

informed the defendant of the nature of the right that he was about to give up.[4] The trial court inquired of the defendant's formal education—a high school diploma completed while in military service and experience in teaching and languages —and, satisfied that the defendant was competent to do so, granted his motion to represent himself. The court directed Mr. Brisbois to remain in the courtroom during the proceedings until such time as the circuit court would allow his withdrawal.

Contrary to defendant's view, we find his actions to have constituted a knowing, intelligent and voluntary waiver of his constitutional right to assistance of counsel, under the standards articulated in *People v Anderson,* 398 Mich 361; 247 NW2d 857 (1976), and *People v Holcomb,* 395 Mich

---

future plans on this but I'd rather not divulge them completely. But at the time I would like to proceed in proper person."

[4] The colloquy between the district court and the defendant shows that the district court determined that defendant's waiver of assistance of counsel was knowing, intelligent, and voluntary.

"There certainly is every right for you to proceed in proper person and represent yourself. The Court is in complete agreement with that. However before I'm going to allow you to proceed with proper person I want to satisfy myself that you understand your total rights.

"Again I want to state to you that you are aware that you are facing two serious charges. Conviction for these charges carries life imprisonment or any term of years. So obviously they are very serious.

"Since you have a right to talk to counsel, to consult with counsel and to have counsel represent you. That if you cannot afford to hire your own counsel, then the Court will provide you with an attorney free of charge. At no expense to you. Do you understand that right?

"MR. EDDINGTON: Yes, I understand it.

"THE COURT: In fact, you have exercised this right in the past and that at one time, at least in front of Judge Scorsone you did request that an attorney be appointed for you, is that right?

"MR. EDDINGTON: Yes.

"THE COURT: And now that you have understood that right and at that time exercised that right, it's my understanding now that you wish to waive that right and proceed to represent yourself, is that right?

"MR. EDDINGTON: Yes, due to extenuating circumstances I'll proceed proper person."

326; 235 NW2d 343 (1975). Defendant's request was unequivocal: even though reserving his right to retain counsel at a later date, the defendant declared that he desired to proceed then and there with the preliminary examination as his own counsel. The trial court adequately informed the defendant of the dangers and potentially serious consequences of self-representation and determined that the defendant's competence was sufficient to allow assertion of the constitutional right to self-representation. Although the defendant lacked technical legal knowledge, legal expertise is not the relevant inquiry regarding competence to represent oneself. *Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975), *People v Anderson, supra,* at 368; 247 NW2d at 860. Lastly, the district court determined that the defendant's self-representation would not disrupt or unduly inconvenience the court or the administration of the court's business; that finding is implicit in the district court's ruling to allow the defendant to proceed on his own.

Just before noon on the day of the preliminary examination, attorney Craig Dill's arrival interrupted the proceedings. Mr. Dill stated that he had been retained to represent the defendant and requested an adjournment to allow him time for necessary preparation of the case. In response to the court's interrogation, defendant Eddington stated that he no longer desired to proceed in propria persona but now wanted to be represented by Mr. Dill. The court ruled that it would allow representation by Mr. Dill, but upon consideration of the notice which the parties had received and the time for preparation already allowed the defendant, the court denied the motion for adjournment.

When the examination resumed after a two hour noon recess, attorney Dill stated that he had been discharged by the defendant and that the defendant again desired to represent himself. Upon questioning from the bench, the defendant stated that he had requested Dill's services because he felt that he himself was inadequate to perform as legal counsel. However, if Dill could not be provided adequate time to prepare, the defendant no longer desired his services and had determined to act as his own counsel.

Upon resumption of the examination, the defendant refused to take further active part, claiming that he had been denied effective assistance of counsel by the district court's actions. The prosecution then rested its case and moved to have the defendant's case bound over for trial. The district court granted the motion as to both charges.

The defendant claims that the trial court reversibly erred by refusing to grant an adjournment to allow his retained attorney to prepare for the examination.

While a defendant has a right to assistance of counsel guaranteed by the 6th and 14th Amendments of the Federal Constitution and article 1, § 20 of the Michigan Constitution, an indigent defendant is not constitutionally entitled to the attorney of his choice. "He may, however, become entitled to have his assigned lawyer replaced upon a showing of adequate cause for a change in lawyers." *People v Ginther,* 390 Mich 436, 441; 212 NW2d 922, 924 (1973), *People v Blassingame,* 59 Mich App 327, 331; 229 NW2d 438, 440 (1975), *People v Bradley,* 54 Mich App 89; 220 NW2d 305 (1974), *People v Wilson,* 43 Mich App 459; 204 NW2d 269 (1972), *lv den,* 393 Mich 813 (1975). The decision regarding substitution of appointed coun-

sel is entrusted to the trial court's discretion: the substitution should be granted upon a showing of good cause if it would not unreasonably disrupt the judicial process. *People v Blassingame, supra, People v Wilson, supra.*

As a necessary corollary, in order to insure the effective representation required for a fair trial, the defendant may seek an adjournment in order to allow his new counsel a reasonable opportunity to prepare his case. *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972). While the grant of a request for a continuance is entrusted to the trial court's discretion, that exercise of discretion must respect the crucial role that legal representation plays in the system of criminal justice. "A myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Citations omitted.) *Nilva v United States,* 352 US 385; 77 S Ct 431; 1 L Ed 2d 415 (1957), quoted in *People v Charles O Williams, supra,* at 575; 194 NW2d at 342. Our Supreme Court has articulated the considerations which should guide the exercise of the trial court's discretion when faced with a request for a continuance in a criminal case: (1) the origin and nature of the right asserted, (2) the defendant's reasons for asserting that right, (3) the defendant's negligence or untimely assertion of the right, and (4) the extent to which previous delays or disruptions are attributable to the defendant. *People v Wilson,* 397 Mich 76, 81; 243 NW2d 257,

260 (1976), *reh den,* 397 Mich 962 (1976), *People v Merritt,* 396 Mich 67, 81; 238 NW2d 31, 37 (1976), *reh den,* 396 Mich 977 (1976), *People v Charles O Williams, supra,* at 578; 194 NW2d at 343, *People v Shuey,* 63 Mich App 666, 672–673; 234 NW2d 754, 757 (1975). The decision is a delicate task of preserving the defendant's right to a fair trial while preventing abuse or disruption of trial procedures to the prejudice of a speedy, orderly, and impartial criminal justice system.

Application of this four-pronged test convinces us that the district court abused its discretion in denying retained defense counsel's request for a continuance.

1. The defendant was asserting his constitutional right to assistance of counsel, a right clearly protected by US Const, Am XIV, Am VI and Const 1963, art 1, § 20. "This right has been jealously protected by the courts and is of critical importance to any defendant in a criminal trial. Hence, whenever this right is asserted, the trial court must take special care to insure that it is protected." *People v Charles O Williams, supra,* at 576; 194 NW2d at 342.

2. The defendant had a legitimate reason to retain new counsel: his realization that he lacked legal expertise adequate to continue his defense. While the defendant's troubles with the technical rules of procedure were not so glaring as to call for the trial court's intervention *sua sponte,* his difficulties in proceeding with cross-examination provided legitimate grounds to retain counsel for the balance of the preliminary examination. We are aware of the quandary which the right to self-representation engenders: the accused is constitutionally entitled to proceed *in propria persona* without legal expertise, at the same time, the

constitutional guarantee of assistance of counsel also entitles an accused to withdraw from self-representation upon a showing of a legitimate need to do so. The importance of the right to assistance of counsel mandates that the defendant be allowed to withdraw in favor of trained counsel if the substitution would not result in unwarranted disruption prejudicial to the orderly progress of the case.

3. The defendant's untimely request to retain counsel was reasonable under the circumstances. Contrary to the district court's declaration that the defendant had already had adequate opportunity to retain counsel, the defendant had had but less than three days prior to the preliminary examination in which to find and retain new counsel. The district court had already refused to appoint substitute counsel and had indicated that the preliminary examination would not be allowed to be delayed beyond January 31. The defendant's incarceration during this period restricted his ability to seek out new attorneys and discuss the matter with them. The record does not support the district court's statement that the substitution of counsel was a deliberate attempt to delay proceedings; rather, the record supports the defendant's claim that attorney Dill's untimely appearance was due to the last-minute request of the defendant's friends and family after the defendant's diligent efforts had failed. Although the defendant had previously indicated his personal belief that a three day period would suffice to obtain new counsel, the optimism of that statement does not indicate that his untimely retention of counsel was due to his own dereliction.

4. Substitution of retained counsel Dill was not part of a pattern of recurring delay or disruption.

Although the defendant's first appointed counsel had previously obtained a one week delay for preparation, that delay had placed the preliminary examination but 16 days after the date of the offense.

We fail to perceive how adjournment of the examination for a few more days would have unduly disrupted or prejudiced the prosecution. Unlike those in *People v Charles O Williams, supra,* and *People v Shuey, supra,* this request for delay came at an early stage of the proceedings, not on the brink of trial. We can appreciate the district court's reluctance to adjourn midstream in the examination, but the convenience of the court and the witnesses was not a sufficient ground to justify denial of defendant's request for assistance of retained counsel.[5] We agree with the Supreme Court's observations in a case involving a request for a continuance to meet the statutory deadline for notice of alibi:

"Obviously, there may be occasions when defendant's delaying tactics or clear disregard for the rules leave the trial court no other choice. At times, however, perhaps because of late discovery of witnesses despite a diligent search, or other circumstances beyond the control of defendant and his or her counsel, the interest of the state in fullest discovery and a fair trial for defendant might well outweigh any negative effects on the trial process." *People v Merritt, supra,* at 83; 238 NW2d at 38.

Here, the state interest in effective representation

---

[5] The prosecutor opposed an adjournment on the ground that delay would inconvenience the two examination witnesses, but did not state that a delay would make the witnesses unavailable or otherwise prejudice the presentation of the people's case. Thus, at the time of the district court's ruling, the district court was not confronted with undue disruption or the possibility that future delay would result from the adjournment requested.

at the critical stage of the preliminary examination outweighed the inconvenience which the district court sought to avoid.

Our conclusion that the district court abused its discretion in denying the defendant's request for a continuance does not merit reversal of the defendant's conviction unless the defendant can demonstrate prejudice, *People v Wilson, supra,* at 81; 243 NW2d at 260, or at least reason to believe that his case was prejudiced. *People v Wilson, supra,* at 83; 243 NW2d at 261 (concurring opinion of Levin, J.). In his motion for a new trial based on the district court's error, the defendant did not even allege how he was harmed by denial of his request for a continuance, and upon our detailed review of the record, we are convinced that the district court's error was harmless beyond a reasonable doubt. See *Coleman v Alabama,* 399 US 1; 90 S Ct 1999; 26 L Ed 2d 387 (1970).

Analysis of the functions served by counsel at the preliminary examination, as described in *Coleman v Alabama, supra,* at 9; 90 S Ct at 2003; 26 L Ed 2d at 397, shows that the defendant was not prejudiced by the district court's denial of a continuance. The people called two witnesses at the preliminary examination, both of whom unequivocally established the elements of the crimes charged and identified the defendant. The defendant cross-examined at length, in a manner not inartful. It was subsequent thereto, after conferring with retained counsel, that defendant declined to cross-examine further. The district court's decision to bind over was clearly supported by the evidence. The defendant has not alleged nor shown that retained counsel would have gained more discovery or evidence for later impeachment at trial through cross-examination at the prelimi-

nary examination. Nor has the defendant alleged trial use of testimony from an examination witness who was unavailable at the time of the trial, or failure to preserve favorable testimony. Finally, the timely appointment of able trial counsel prevented neglect or loss of any of the pretrial motions available to the defendant.

## II

During the time that the defendant was "holed up" in the Heidelberg Inn, he engaged in conversations with the Saginaw County Prosecutor, E. Brady Denton, concerning the dozen hostages being kept inside. Mr. Denton did not take an active part in the defendant's arrest, nor did he witness any of the events of the robbery. Mr. Kaczmarek, the trial prosecuting attorney, moved before trial to strike Mr. Denton's name from the list of witnesses on the information, but the defense opposed the motion and it was denied. Similarly, the defendant's pretrial motion to require use of a special prosecutor was denied. On appeal the defendant argues that the presence of the prosecuting attorney as a witness deprived the defendant of a fair trial.

Our review of the record shows that the prosecutor's testimony dealt with matters collateral to the charge of armed robbery and was elicited by the defense. Since the prosecutor's testimony did not prejudice the defendant, any error in his presence as a witness was harmless beyond a reasonable doubt.[6]

## III

Defense counsel moved for a venue change on

[6] We express no opinion regarding the necessity of a special prosecutor in a case in which the county prosecutor's testimony is material to a contested issue.

the grounds of pretrial publicity and the defendant's notoriety due to criminal matters which had been tried some five years prior to this trial. The trial court took the motion under consideration pending the selection of a jury. Although the trial court declined to employ about half of defense counsel's tendered voir dire questions, both parties were provided an opportunity to personally interrogate the prospective jurors. Considering the extensive interrogation of the jury panel regarding their prior knowledge of the defendant and this incident, we cannot say that the trial court abused its discretion by its limits on the scope of voir dire. *People v Hoffmeister,* 52 Mich App 219; 217 NW2d 58 (1974), *rev'd on other grounds,* 394 Mich 155; 229 NW2d 305 (1975).

After successfully empaneling a jury, the trial court denied the defendant's motion for a change of venue stating that the ability to select an impartial jury negated the defendant's claim of insuperable prejudicial pretrial publicity. While mere ability to select 12 self-proclaimed unbiased jurors would not in itself remove the spectres of media pressure or community bias, our review of the record convinces us that the trial court did not abuse its discretion by refusing a venue change. This trial occurred at least five years after the defendant's trials on other charges, and the record does not support defendant's claims of community bias or sensationalism which would preclude the possibility of a fair, impartial trial. The jury's verdict of acquittal on the rape charge is an indication that the jury independently and impartially weighed the evidence in reaching its determination.

## IV

The defendant argues that the trial court's in-

structions concerning circumstantial evidence and the elements of armed robbery were reversibly erroneous.

The trial court's instruction on the nature and consideration of circumstantial evidence was accurate; nothing further need have been given. It is not each and every fact claimed that must be proven beyond a reasonable doubt; but rather, each and every essential element of the offense charged. *People v Dellabonda,* 265 Mich 486, 513; 251 NW 594, 603 (1933).

Part of the trial court's instruction on armed robbery was intended to make it clear to the jury that the defendant need not have taken money from the person of the barmaid in order to have committed armed robbery. The instruction stated that if the jury found that the barmaid was in charge of the bar, that the money in the till was under her control, and that the money was taken from the till while the barmaid's control was severed by the defendant, then the jury should find that the "from his person or in his presence any money or other property which may be the subject of larceny" elements of the statute were satisfied. The jury was correctly instructed.

## V

The defendant lastly argues that the trial court erred by refusing to grant a new trial on the grounds of newly discovered evidence. Our review of the record shows that the auto repair receipts which the defendant alleges were "newly discovered" were known to the defendant at the time of trial. The trial court properly ruled that the evidence could with reasonable diligence have been produced at trial.

Affirmed.