# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* G. GRABOWSKI, Minor.

UNPUBLISHED
August 16, 2018

No. 341810
Wexford Circuit Court
Family Division
LC No. 16-026501-NA

Before: SAWYER, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Respondent father appeals as of right an order terminating his parental rights with respect to his minor child, GG, pursuant to MCL 712A.19b(3)(c)(*i*) and (c)(*ii*) (conditions resulting in adjudication persist, and other conditions exist that cause the child to come within the court's jurisdiction); (3)(g) (failure to provide proper care and custody); (3)(h) (parental incarceration); and (3)(j) (reasonable likelihood of harm). We affirm.

## I. FACTS

Children's Protective Services (CPS) received a complaint following GG's birth that his mother[1] had tested positive for opiates, and that GG was suffering from withdrawal symptoms. A little over a month later, on February 12, 2016, respondent was arrested during a drug raid during which police officers observed GG on respondent's couch unattended and discovered drug paraphernalia. Prior to the raid, respondent left GG alone in his apartment with a confidential informant while he left to purchase drugs. At that time, GG had been sleeping in a dresser drawer. Respondent was also facing eviction and lacked a stable income. Accordingly, GG was removed from respondent's care and was placed with the Department of Health and Human Services (DHHS).

By June 14, 2016, respondent was out of jail on bond, but he pleaded guilty to maintaining a drug house, MCL 333.7405(1)(d), on August 8, 2016, and was sentenced to serve 16 months to 2 years in prison on October 17, 2016. He was also sentenced on December 22,

---

[1] Respondent mother's parental rights to GG were voluntarily released.

2016, to serve 48 to 240 months for another conviction of delivery of a controlled substance less than 50 grams, MCL 333.7401(2)(a)(*iv*).

At the September 5, 2017 pretrial conference, respondent and his attorney indicated that defendant "wishes to discharge my services and represent himself." Respondent answered affirmatively when asked, "You want to decline representation by a lawyer . . . all together?" After the court asked respective counsel for any input on the matter, respondent stated, "I have a whole law library and nothing but time. I can handle this."

The court advised respondent of his right to counsel, and the following exchange occurred:

> *The court*: [Y]ou are making this request than [sic] with a full understanding that if you have the right to counsel and you have the right to . . . what is essentially a lesser level of counsel . . . advisory or standby counsel, if you would choose to do that as well?
>
> Would you be . . . interested in that or do you want to go up . . . by yourself all together?
>
> *Respondent*: I'd like to go by myself.
>
> *The court*: All right. Has anyone threatened you in any way to make you do that?
>
> *Respondent*: Nope.
>
> *The court*: Has any—have any promises made [sic]? And you understand that the . . . the attorney for [petitioner] thinks you're doing this to try and set up an appeal but that in, in and of itself would not be any basis for appeal. You understand that?
>
> *Respondent*: Yep.
>
> *The court*: And do you understand that you would be, you're on your own and responsible for the legal judgments and tactics you've made and ignorance of the law is no excuse?
>
> *Respondent*: Yep.

The court expressed that "it is necessary to . . . allow him to do that. Um, and I think he does so at his own jeopardy," and granted respondent's motion to proceed *in propria persona*. The court indicated that it would "adjourn this for a couple weeks" and that it would not discharge respondent's counsel until the next pretrial conference. At the subsequent pretrial conference, respondent's attorney appeared on his behalf and stated that respondent desired to proceed alone throughout the pretrial. When the court asked respondent whether he knew how many witnesses he desired to call at trial, respondent stated, "I'm gonna try and call as many as possible to stretch this out as long as I can."

Respondent appeared via Polycom on the first day of trial, and the court again advised him of his right to counsel. After respondent affirmed that he would proceed *in propria persona*, he asked the court whether he could "have an attorney that just helps me when I have questions," and the following exchange occurred:

*The court*: Well . . . that was an option . . . and you declined it. So we have . . . discharged [counsel]. . . . Are you saying that you want him today?

*Respondent*: Yeah.

\* \* \*

*Respondent*: I didn't have . . . I thought I would have a lot more access to the law library. I was only allowed to get two hours per week. I'm . . . so I'd get one hour one day and then one hour another day. And then I got into some trouble and wasn't allowed to use the law library at all. So I wasn't—I haven't been able to get as prepared as I thought I'd be able to.

*The court*: All right. Are you telling me then that you're—that even if, if I were to be able to get [counsel] for you today . . . you're not prepared to go forward? Is that what you're saying?

*Respondent*: Not even close.

The court indicated that although respondent's request for counsel was untimely, "in order to protect your rights . . . I'm gonna make an effort to get . . . [counsel] here today." The court noted that respondent could have informed the court of his troubles accessing the law library, and that trial could have accordingly been adjourned. Nonetheless, the court adjourned until respondent's attorney could appear, and reconvened upon his arrival. Counsel then indicated that respondent wanted him to act as lead counsel. The court denied this request. The trial court permitted respondent's attorney to act exclusively in an advisory capacity, i.e., counsel was not permitted to raise objections, nor could he examine witnesses.

Trial proceeded with the examination of several witnesses for petitioner. At the conclusion of the first witness's direct examination, the court asked respondent whether he had any questions but respondent remained silent. Respondent likewise remained silent on the Polycom at the conclusion of the second witness's direct examination. It appears from the record that respondent continued to disconnect from the telephone line multiple times during witness examination. Once the court reestablished connection after multiple occurrences of disconnection, respondent stated, "I'm not gonna participate in this. I'm going back to my unit."

On the second day of trial, respondent's attorney stated that respondent had indicated to him that "he most likely was not going to stick around for the proceedings and as I left the courtroom after speaking with him he left the room there," and that "we just got confirmation that he's gone and not in that room. So it appears he does not wish to participate." The court likewise indicated after closing arguments concluded that "[t]he record should reflect that we do have . . . a video connection with the . . . [MDOC] through polycom. Apparently the hearing

-3-

room is empty, as far as I can see, it doesn't appear that [respondent] is participating." The court proceeded with closing arguments and ultimately rendered its oral opinion on the record, terminating respondent's parental rights.

## II. DUE PROCESS

Respondent first argues that his participation via Polycam, as opposed to being physically present at the termination trial, resulted in a deprivation of his constitutional right to due process of law. We disagree.

We first note that respondent failed to preserve this issue because he failed to object on constitutional grounds to the court's procedures with respect to his virtual presence at trial. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Accordingly, we review respondent's unpreserved claim of constitutional error for plain error affecting substantial rights. *Id.* Although the Court disfavors consideration of unpreserved claims of error, plain errors may be noticed in spite of having not been brought to the attention of the court. *People v Carines*, 460 Mich 750, 761-763; 597 NW2d 130 (1999), citing *United States v Olano*, 507 US 725, 731; 113 S Ct 1770; 123 L Ed 2d 508 (1993). Forfeiture under the plain error rule is avoided where: (1) error occurred; (2) the error was clear or obvious; and (3) the error affected substantial rights. *Carines*, 460 Mich at 763.

Parents have a due process interest in the "companionship, care, custody, and management of their children . . . ." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). "Due process requires fundamental fairness, which is determined in a particular situation first by 'considering any relevant precedents and then by assessing the several interests that are at stake.' " *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009), quoting *Lassiter v Durham Co Dep't of Social Servs*, 452 US 18, 25; 101 S Ct 2153; 68 L Ed 2d 640 (1981). The following three factors are generally considered to determine the specific measures due process requires in a particular case:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976); see *In re Rood*, 483 Mich at 92-93.]

"[T]here is no absolute right to be physically present at the dispositional hearing of a proceeding to terminate parental rights in Michigan . . . ." *In re Vasquez*, 199 Mich App 44, 49; 501 NW2d 231 (1993). Moreover, "due process does not necessarily require a probate court to secure the presence of a parent incarcerated in the state at a termination hearing." *Id*. at 50. Rather, due process requires an application of the three-part *Matthews* balancing test. *Id*. Physical presence may be necessary to ensure due process if, for example, "the court finds that [the respondent's] physical presence is essential either to assist counsel or to resolve crucial factual disputes." *Id.* Additionally,

MCR 2.004 requires the court and the petitioning party to arrange for telephonic communication with incarcerated parents whose children are the subject of child protective actions. See MCR 2.004(A) to (C). The express purposes of the rule include ensuring "adequate notice . . . and . . . an opportunity to respond and to participate," in part by determining "how the incarcerated party can communicate with the court . . . during the pendency of the action, and whether the party needs special assistance for such communication, including participation in additional [telephone] calls [or videoconferencing . . . .]" MCR 2.004(E)(1) and (4). The court must consider "the scheduling and nature of future proceedings, to the extent practicable, and the manner in which the incarcerated party may participate." MCR 2.004(E)(5). [*In re Mason*, 486 Mich 142, 152-153; 782 NW2d 747 (2010).]

Also, MCR 2.004(F) provides:

A court may not grant the relief requested by the moving party concerning the minor child if the incarcerated party has not been offered the opportunity to participate in the proceedings, as described in this rule. This provision shall not apply if the incarcerated party actually does participate in a telephone call or video conference, or if the court determines that immediate action is necessary on a temporary basis to protect the minor child.

In this case, the record indicates that the trial court made substantial efforts to ensure that respondent was afforded the opportunity to be heard throughout the entire child protective proceedings. The trial court's procedures provided respondent "fundamental fairness" because he was granted participation in the proceedings via Polycom, i.e., a conference telephone, whenever he was incarcerated and physical participation was impracticable. *In re Rood*, 483 Mich at 92. Moreover, considering respondent's limited right to participate physically in either the dispositional hearings or the termination bench trial, *In re Vasquez*, 199 Mich App at 49-50, he has failed to establish that his physical presence was otherwise necessitated. With respect to the private interest affected by the proceedings, it could reasonably be asserted that respondent had a substantial interest in participating physically in the termination trial because he had been representing himself since the court granted his motion at the September 5, 2017 pretrial conference—just shy of three months before trial. At the next pretrial conference on October 3, 2017, respondent expressed his intention to "try and call as many as possible to stretch this out as long as I can." Thus, it may have been prudent for the trial court to attempt to arrange respondent's physical presence by the first day of trial in order to protect the risks associated with respondent's *in propria persona* status coupled with the limitations imposed on respondent's virtual participation via Polycom. However, respondent failed to arrange any witnesses to present at trial and overall failed to participate at trial. Therefore, his physical presence at the termination trial would have provided little to no value to his defense, e.g., almost every time the trial court asked respondent whether he had follow-up questions for a witness, respondent remained silent until he ultimately stated that he was "not gonna participate in this" and returned to his cell. Consequently, the risk of an erroneous deprivation of respondent's interests in physical participation at trial was extremely low since he was afforded virtual participation. In other words, respondent has not demonstrated that his physical presence would have had any greater probable value in protecting his interests than the substitute (Polycom)

procedures used. Finally, although the state's interest in proceeding with respondent's virtual presence was not placed expressly on the record, it can reasonably be inferred that its procedures were more administratively efficient than the alternative considering the trial court expressed concerns regarding respondent delaying the proceedings and allowing respondent to participate virtually was presumably more expeditious than arranging his physical presence.

Additionally, the record lends itself to the conclusion that the trial court's procedures complied with MCR 2.004, which "requires the court and the petitioning party to arrange for telephonic communication with incarcerated parents whose children are the subject of child protective actions." *In re Mason*, 486 Mich at 152. Because respondent actually participated via telephone whenever his physical presence was impracticable due to his imprisonment, the trial court was not precluded from granting petitioner the relief sought. MCR 2.004(F).

In sum, respondent has failed to establish that the trial court procedures deprived him of his constitutional right to due process of law because his virtual participation in the proceedings via Polycom was not fundamentally unfair. *In re Rood*, 483 Mich at 92. Respondent's right to participate physically at the termination trial was not absolute, *In re Vasquez*, 199 Mich App at 50, and the *Matthews* factors weigh in favor of the trial court's procedures. Additionally, the trial court's procedures complied with MCR 2.004. Therefore, respondent has failed to establish plain error.

### III. WITHDRAWAL FROM SELF-REPRESENTATION

Next, respondent argues that the trial court should have allowed him to withdraw from self-representation and reappointed counsel once respondent indicated that he was unprepared for trial. We disagree.

"When assessing the validity of a . . . waiver of the right to counsel, we review de novo the entire record to determine whether the trial court's factual findings regarding the waiver were clearly erroneous." *People v Willing*, 267 Mich App 208, 218; 704 NW2d 472 (2005). "A decision qualifies as clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *Id.*, quoting *In re JK*, 468 Mich at 209-210.

"This Court has explicitly recognized that the United States Constitution guarantees a right to counsel in parental rights termination cases." *In re Williams*, 286 Mich App 253, 275; 779 NW2d 286 (2009). However, the right to counsel may be waived, as MCL 712A.17c(6) pertinently provides:

> Except as otherwise provided in this subsection, in a proceeding under section 2(b) or (c) of this chapter, *the respondent may waive his or her right to an attorney.* . . . [Emphasis supplied.]

Once a respondent makes a valid waiver of the right to counsel, there is no absolute right to withdraw from self-representation. A respondent "who initially waives counsel should be allowed to withdraw from self-representation in favor of representation by counsel if [he] shows a legitimate reason for the change and if substitution would 'not result in unwarranted disruption

prejudicial to the orderly progress of the case.' " *In re Cobb*, 130 Mich App 598, 600-601; 344 NW2d 12 (1983), quoting *People v Eddington*, 77 Mich App 177, 188; 258 NW2d 183 (1977). Moreover, "[a]n erroneous deprivation of appointed counsel for child protective proceedings can be subject to a harmless error analysis." *In re Williams*, 286 Mich App at 278.

"Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles pertaining to the right to counsel developed in the context of criminal law apply by analogy in child protective proceedings. *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002), overruled in part on other grounds *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). "While a defendant may choose to forgo the assistance of counsel at trial, any waiver of the right to counsel must be knowing, voluntary, and intelligent." *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004). Additionally, "courts are to make every reasonable presumption against the waiver of a fundamental constitutional right, including the waiver of the right to the assistance of counsel." *Id*.

> Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Id*. at 190.]

Further, "there is no constitutional right to a hybrid defense and, thus, a trial court is not required to order hybrid representation." *People v Kevorkian*, 248 Mich App 373, 420; 639 NW2d 291 (2001). Nonetheless, the provision of advisory counsel, i.e., "standby counsel," is not the provision of counsel that can negate a total deprivation of the right to counsel. *People v Willing*, 267 Mich App 208, 227-228; 704 NW2d 472 (2005)

In this case, at the September 5, 2017 pretrial conference, respondent affirmatively indicated that he wanted to discharge attorney Michael O'Hagan and represent himself exclusively. The court then advised respondent of his right to counsel, and secured a knowing, voluntary and understanding waiver. The court carefully advised respondent of the option to proceed with advisory counsel and he expressed his desire to "go by myself." Further, the court diligently cautioned respondent about the risks associated with self-representation, e.g., that he would be responsible for legal judgments and that "ignorance of the law is no excuse." The trial court also went one step further and adjourned the matter, noting that respondent might change his mind (presumably after encountering hardship with his own legal research and trial preparation), and reserved O'Hagan as counsel of record until the next hearing. Thus, the trial court secured a valid waiver of respondent's right to counsel before trial. See *Russell*, 471 Mich at 190.

At the onset of trial, respondent reaffirmed that he would proceed *in propria persona* but requested standby counsel. He initially sought reinstatement of counsel to serve in an advisory capacity, and he ultimately received precisely what he requested. And, once respondent indicated that he was "[n]ot even close" to being prepared to proceed *in propria persona*, the court arranged to have O'Hagan present. Once O'Hagan arrived and respondent spoke with him,

respondent stated that he wanted O'Hagan as *lead* counsel, not *advisory* counsel, and the court denied the motion.

Respondent's request can reasonably be characterized as a motion to withdraw because it implies respondent's desire to have O'Hagan act "as lead counsel and not advisory counsel," i.e., to have O'Hagan essentially take over in lieu of respondent himself. Although the court denied this motion, it nonetheless exercised diligence and respect for respondent's right to counsel at the outset by noting that although respondent's initial request to secure O'Hagan's presence was untimely, it would make efforts to do so in order to protect respondent's rights. The court accordingly arranged for O'Hagan's presence throughout the rest of the first day of trial and on the second day of trial. Although the court did not permit O'Hagan, in his limited representative capacity, to make objections or "ask questions," respondent was granted what he initially requested at the commencement of trial—O'Hagan's advisory services. Considering that respondent himself indicated to the court—upon making his motion to withdraw—that "O'Hagan didn't feel that he . . . had the capacity to defend me 'cause he isn't familiar with all the facts of this case," reinstating O'Hagan would have likely led to another adjournment. Such a delay would have been unreasonable in light of respondent's valid waiver of his right to counsel before trial and his indication at the outset that he only needed an attorney who "just helps me when I have questions." As the trial court recognized, it would not tolerate continuous requests for recess "every two minutes in order to delay these proceedings." Thus, although respondent might have arguably established a legitimate reason to withdraw from self-representation—i.e., lack of law library time and resources—it appears that the untimely substitution would have resulted in an unwarranted disruption to the orderly progress of the case. *In re Cobb*, 130 Mich App at 600-601.

Affirmed.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola