## PEOPLE v ROBERT JACKSON

1. HOMICIDE—SECOND-DEGREE MURDER—MALICE—EVIDENCE—SUFFICIENCY.

Evidence was sufficient to support a conviction of second-degree murder where defense counsel conceded that defendant had killed the victim with a shotgun since the malice required for second-degree murder is presumed where death results from a deadly weapon (MCLA 750.317).

2. HOMICIDE—DEFENSES—SELF-DEFENSE—ESSENTIAL ELEMENTS.

The trial court did not err in rejecting defendant's claim of self-defense in a prosecution for second-degree murder where the defendant neither established that he was in danger of suffering grievous bodily harm nor offered any proof that he made any effort to avoid the use of extreme force.

3. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—PRODUCTION.

The prosecutor's failure to produce an indorsed res gestae witness did not deprive defendant of a fair trial where the trial court excluded the preliminary examination testimony of the witness after determining that the prosecution had not exercised due diligence to produce the witness, and defendant failed to object to the nonproduction of the witness but did object to a short adjournment to allow the prosecutor to attempt to locate the witness.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 April 12, 1972, at Detroit. (Docket No. 11776.) Decided June 27, 1972. Leave to appeal granted, 389 Mich 751.

Robert Jackson was convicted of second-degree murder. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 53.
[2] 40 Am Jur 2d, Homicide §§ 139 *et seq.,* 291.
[3] 40 Am Jur 2d, Homicide § 331 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Michael R. Mueller,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *David A. Goldstein,* Assistant Defender, for defendant.

Before: FITZGERALD, P. J., and McGREGOR and O'HARA,* JJ.

McGREGOR, J. After a trial on a charge of first-degree murder, defendant was found guilty of second-degree murder, a violation of MCLA 750.317; MSA 28.549, in Detroit's Recorder's Court, sitting without a jury. A timely claim of appeal as of right was filed.

Defendant, together with Lewis and Wilson, were driven to the vicinity of the home of Richard Holmes; defendant Jackson, Lewis and Wilson went to the Holmes residence, while two other individuals, Gerald and David Blannon, remained in the car which was parked several houses away. Upon arriving at the Holmes residence Wilson knocked on the door; defendant remained on the steps leading to the porch of the Holmes residence; Lewis and Wilson were located on the porch. After opening the door, Holmes told Wilson that he did not know Lewis and thereafter a short conversation about narcotics ensued between Holmes and Wilson. Wilson reached into his pocket or made a movement toward the door, and Holmes jumped back into the hall. Lewis testified that Holmes

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

fired the first shot from the hallway, although in fact, he saw no weapon in Holmes' possession. Lewis did see a flash in the hallway and heard a loud noise, but he could not say whether it came from defendant's shotgun or from Holmes' alleged pistol. Lewis testified that he saw the defendant remove a short-barreled shotgun from beneath his coat and fire three or four times; the next thing Lewis saw was Wilson lying on the porch.

A Detroit police officer assigned to ballistics testified that the murder weapon was a shotgun, which testimony was corroborated by a pathologist, who testified that the cause of death was a shotgun wound to the chest. Richard Holmes was not located and therefore did not testify at trial. The trial court ruled that the people had not made a good-faith attempt to locate Holmes and held that his testimony given at the preliminary examination was inadmissible at trial. Holmes had testified at the preliminary examination that he did not fire his weapon. Defendant did not object to the nonproduction of Holmes nor move for a continuance to allow his production as a witness for trial; in fact, the defendant protested a short adjournment to allow the people to attempt to secure Richard Holmes as a witness. Notwithstanding the foregoing, Officer Raymond Smith testified that he had travelled 900 to 1,000 miles, to Lake Providence, Louisiana, where he understood Holmes was living, in an attempt to contact him for trial. Subsequently, during trial, Holmes was contacted by telephone in Baton Rouge, Louisiana, at which time he stated that he did not wish to return to Detroit to testify.

Evidence in the trial court indicates that Wilson, Lewis and the defendant went to the Holmes residence to purchase narcotics. Lewis testified

that there was a cordial atmosphere between the three individuals prior to their arrival at the Holmes residence. His testimony indicated that the defendant apparently intended to shoot Holmes, and instead, shot and killed Wilson. Both the prosecutor and defense counsel agreed that this was the posture of the case.

On appeal, defendant contends that the evidence at trial was insufficient to support defendant's conviction of second-degree murder, alleging that his claim of self-defense was not adequately considered. He also argues that he was prejudiced by the failure of the prosecution to produce Richard Holmes and their failure to analyze and introduce into evidence a shotgun allegedly found in Holmes' house. Finally, defendant contends that the trial judge did not adequately comply with GCR 1963, 517.1.

Defendant's strongest contention is that the evidence before the trial judge was not sufficient to overcome the defendant's claim of self-defense. An objection going to the weight of the evidence can be raised only by a motion for a new trial, and a denial is reviewed on appeal for abuse of discretion, but the trial judge's discretion is not invoked where no such motion is filed.

"Where an issue has not been preserved by timely objection, a new trial will not be ordered if the Court is convinced that it would not serve a useful purpose." *People v Mattison,* 26 Mich App 453, 457 (1970).

Failure to move for a new trial in a criminal case does not prevent a defendant from pressing his claim on appeal that the evidence was legally insufficient to support a conviction. *People v Jimmie Ragland,* 34 Mich App 673 (1971). However, this Court will not reverse the findings of fact of a

trial judge, sitting without a jury, unless his findings are clearly erroneous. This Court has recently expressed its reluctance to overturn the judgment of the trier of fact below, in *People v Stewart,* 36 Mich App 93, 98–99 (1971):

"When an appellate court is confronted with a challenge to the judgment of the trier of the facts, it will not easily be moved to overturn the judgment below. The trier of the facts, be it judge or jury, has had the opportunity to listen to the witnesses and observe their demeanor; he has had the opportunity to observe and evaluate the plethora of subjective and objective factors which together influence his opinion of the credibility of the witnesses. These factors do not survive in the stenographic transcription, we merely have a record of the words spoken at trial—an incomplete record at best. For this reason, an appellate court is reluctant to overturn the judgment of the trier of fact and substitute its judgment, which must necessarily be based on an inadequate description of the factors which lead the trier of fact to reach its decision. *People v Franczyk* (1946), 315 Mich 384; *People v Panknin* (1966), 4 Mich App 19."

This Court went on further to state in the *Stewart* case:

"To determine whether or not the prosecution negated all theories consistent with innocence, we must look at the record in the light most favorable to the prosecution and determine whether sufficient evidence was adduced, which, if believed by the jury, *could* support a finding of guilt beyond a reasonable doubt, *(People v Williams* [1962], 368 Mich 494; *People v Panknin, supra; People v Floyd* [1968], 15 Mich App 284), not whether it could support a verdict of innocent."

Thus, the facts brought out at the trial in the instant case must be analyzed within this framework to determine if there was reversible error.

The findings of fact of the trial court were as follows:

"I'm satisfied beyond a reasonable doubt that this defendant, Robert Jackson, at the time and place set forth in the information, came to the home of one Richard Holmes in company with the deceased, and at the time he came there he was armed with a sawed-off shotgun, which he carried under his coat. That they came to the Richard Holmes home for the purpose of making an unlawful purchase of narcotics. That the defendant Jackson approached the home and lingered on the steps while the deceased went up on the porch and rang the doorbell. Some misunderstanding evidently ensued. Holmes was not satisfied that the sale should be made under the circumstances then existing, because he evidently had some doubts concerning the reliability of some of the persons who accompanied the deceased. And it was at or about this point when this defendant Jackson, while still on the steps, drew the shotgun and fired the fatal shot that killed the deceased.

"There is no question, therefore, that we do have here a felonious homicide, and the only thing that remains to be determined is whether it is murder in the first degree, in the second degree, or manslaughter.

"I do not feel that the evidence is sufficient to satisfy the court beyond a reasonable doubt that there was the requisite premeditation that is a necessary element to a finding of first-degree murder.

"However, the use of a sawed-off shotgun carries with it in itself a necessary element of malice. The engaging in unlawful activity, the purchase of narcotics, and the carrying of a shotgun for the purpose of facilitating such a purchase, is sufficient to satisfy the court beyond a reasonable doubt that the element of malice does exist.

"Accordingly, I find the defendant guilty of murder in the second degree."

There was testimony from which the trier of fact could reasonably infer that the defendant went to

the Holmes house with Lewis and Wilson to purchase narcotics. The element of malice required for second-degree murder is presumed where death results from a deadly weapon. Defense counsel conceded in his final argument that the defendant fired the death-dealing shotgun.

In *People v Etheridge Turner*, 37 Mich App 226, 229 (1971), this Court reiterated the elements necessary to establish a defense of self-defense:

> "In order to make out a case for self-defense three elements must be established: first, it must appear that the defendant was not the aggressor; second, it must appear to the defendant that he was in danger of suffering grievous bodily injury; and third, it must also be shown by evidence that there was no way open for the defendant to retreat and that his only safety was in repelling the attack by physical means."

See also 1 and 3 Gillespie, Michigan Criminal Law & Procedure, (2d ed), § 26, p 46; § 1693, p 2043.

In *People v Stallworth*, 364 Mich 528, 535 (1961), it was held that self-defense requires a showing that the defendant had done "all which is reasonably in his power to avoid the necessity of extreme resistance, by retreating where retreat is safe".

Even if we assume that defendant was not the aggressor, the record does not clearly establish that defendant was in danger of suffering grievous bodily harm. However, even if we again assume that defendant sufficiently established the second required element, there is no proof that defendant made any effort whatsoever to avoid the use of extreme force. What the evidence does establish is that defendant went, armed with a deadly weapon, to Holmes' residence, and that he used that weapon without a moment's hesitation, not once but three or four times. Thus, the defendant has not met his burden of establishing his defense of

self-defense. The trial court's determination is based in part on the credibility of the witnesses and this Court will not second-guess the trial judge where the evidence does not clearly support defendant's claim of self-defense.

During the cross-examination of a prosecution witness, the defense counsel learned that a 12-gauge shotgun had been found in the Holmes' residence. However, no objection was then made to the failure of the prosecution to produce the weapon. When there has been a failure to object, this Court will not review issues raised for the first time on appeal, unless a manifest injustice has been demonstrated. *People v Leroy Morgan*, 24 Mich App 660 (1970).

In *People v Thomas*, 387 Mich 368, 378 (1972), the Supreme Court held that "no special findings of fact are required in judge-tried criminal cases". Here, the trial judge specifically found that defendant went to the home of Richard Holmes armed with a sawed-off shotgun under his coat for the purpose of making an unlawful purchase of narcotics and committed a felonious homicide, all of which negates the finding of self-defense. This was more than what is legally required. *People v Thomas, supra.* We hold that there was no reversible error on this point.

Defendant further argues that the presence and testimony of Richard Holmes, an endorsed *res gestae* witness, was essential to insure defendant a fair trial, citing *People v Kayne,* 268 Mich 186, 194 (1934). The instant case presents a slightly different variation of the *res gestae* witness problem for consideration by this Court. Here, the trial judge ruled that the prosecution did not exercise due diligence in trying to locate this *res gestae* witness and, therefore, the preliminary examination testi-

mony of the witness could not be presented at trial. This decision is properly within the trial court's discretion. Defendant did not object to the nonproduction of this *res gestae* witness and has not properly preserved this issue for appeal. Defendant also objected to a short adjournment to allow the prosecution to attempt to locate Richard Holmes. At no time did the defendant object specifically to the nonproduction of Richard Holmes as a witness. This issue was, therefore, waived.

The other contentions presented by the defendant on appeal are without merit. There was no miscarriage of justice or reversible error in the trial of this defendant.

Conviction affirmed.

All concurred.