PEOPLE v ANGLIN

Docket No. 48589. Submitted June 10, 1981, at Detroit.—Decided
November 16, 1981.

Robert L. Anglin was convicted of felony murder in Macomb
Circuit Court, Raymond R. Cashen, J. The defendant appeals
alleging that (1) the magistrate at the preliminary examination
erred by allowing testimony concerning inculpatory statements
made by the defendant prior to the establishment of the corpus
delicti, (2) the trial court abused its discretion by denying his
request for substitution of appointed counsel, (3) the trial court
erred in admitting evidence of statements that the defendant
gave to the police, (4) he was denied his right to the effective
assistance of counsel, (5) venue was not properly established, (6)
the trial judge erred in denying his motion for a directed
verdict, (7) the trial court erred in giving its instruction on

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 149, 530.
   30 Am Jur 2d, Evidence §§ 1137, 1140–1142.
   40 Am Jur 2d, Homicide §§ 284, 285.
[2] 40 Am Jur 2d, Homicide §§ 45, 53.
[3] 21A Am Jur 2d, Criminal Law § 976 et seq.
   Indigent accused's right to choose particular counsel appointed to
   assist him. 66 ALR3d 996.
   Construction and effect of statutes providing for office of public
   defender. 36 ALR3d 1403.
[4, 5] 29 Am Jur 2d, Evidence §§ 529, 543 et seq., 582 et seq., 590.
[6, 7] 21A Am Jur 2d, Criminal Law §§ 752, 984 et seq.
   Modern status of rules and standards in state courts as to adequacy
   of defense counsel's representation of criminal client. 2 ALR4th
   27.
   Incompetency of counsel chosen by accused as affecting the validity
   of conviction. 74 ALR2d 1355.
[8] 21 Am Jur 2d, Criminal Law §§ 372, 378.
[9] 21 Am Jur 2d, Criminal Law § 361 et seq.
[10] 75 Am Jur 2d, Trial § 524 et seq.
[11] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[12] 5 Am Jur 2d, Appeal and Error §§ 555, 556.
[13] 29 Am Jur 2d, Evidence §§ 228, 285.
   75 Am Jur 2d, Trial § 792.

malice, (8) the verdict was contrary to the great weight of the evidence, and (9) the trial court erred in admitting evidence of the circumstances of his confession including his prior incarceration and attempt to escape from prison for purposes of assisting the jury in deciding the weight and credibility of the confession. *Held:*

1. The people made a good faith effort to establish the corpus delicti before evidence of the defendant's confession was introduced. The presiding magistrate at the preliminary examination was confronted with the realities of a busy schedule and a recalcitrant witness and his decision to allow the prosecution to proceed with the available witnesses and not to consider their testimony until the corpus delicti was subsequently proven by evidence independent of the inculpatory statements was not error.

2. The defendant failed to show an abuse of discretion by the trial court in refusing to appoint substitute counsel. An accused has no right to have counsel of his own choosing appointed nor does he have the right to have his appointed counsel replaced on a whim.

3. The Court of Appeals is not convinced that the trial court clearly erred in its finding that the defendant voluntarily waived his rights before he confessed his guilt. The record demonstrates that the defendant was advised of his rights both prior to arrest and prior to the interrogation session.

4. There is no merit to the defendant's claim that he was denied his right to the effective assistance of counsel.

5. Venue was properly established pursuant to the statute which permits the Attorney General to designate in which county the case should be tried since it was impossible to determine in which county of Michigan the crime occurred.

6. The trial court did not err in denying the defendant's motion for a directed verdict since the evidence, viewed in the light most favorable to the prosecution, would justify a reasonable man in concluding that all of the elements of the crime were established beyond a reasonable doubt.

7. The trial court did not err in giving its jury instruction on malice. The instruction did not include or suggest presumptive language.

8. The Court of Appeals did not give consideration to the issue of whether the verdict was contrary to the great weight of the evidence because the defendant failed to move for a new trial in the trial court.

9. There was no error in the trial court's permitting testi-

mony regarding the defendant's previous incarceration and attempt to escape from prison since the testimony was material to the jury's deliberations concerning the confession. The testimony was material to the relationship that existed between the witness and the defendant and consequently it was admissible. The admissibility of this testimony was only for a specific purpose and the trial court correctly instructed the jury on that point.

Affirmed.

1. CRIMINAL LAW — CORPUS DELICTI — CONFESSIONS.

Proof of the corpus delicti must be demonstrated independent of a defendant's confession and evidence of a confession should not be admitted until the corpus delicti is shown.

2. HOMICIDE — FIRST-DEGREE MURDER — CORPUS DELICTI.

The corpus delicti of first-degree murder includes proof: (1) of a death; (2) that such death was caused by a criminal agency or instrumentality; and (3) that an element distinguishing first-degree murder from second-degree murder exists.

3. CRIMINAL LAW — APPOINTED COUNSEL.

An indigent defendant, while guaranteed the right to be represented by counsel, has no right to have counsel of his own choosing appointed nor does he have the right to have his appointed counsel replaced on a whim.

4. CRIMINAL LAW — CONFESSIONS.

The Court of Appeals should examine the record and make an independent decision when reviewing a trial court's determination of the voluntariness of a defendant's confession; however, the Court of Appeals will not reverse a lower court's finding that a defendant's confession was voluntary unless such finding is clearly erroneous.

5. CRIMINAL LAW — CONFESSIONS.

The Court of Appeals considers the following factors when reviewing a lower court's determination of the voluntariness of a defendant's confession: (1) the duration and condition of detention; (2) the manifest attitude of the police toward the accused; (3) the physical and mental state of the accused; and (4) diverse pressures which sap or sustain the accused's power of resistance or self-control.

6. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

The proper test for reviewing a claim of ineffective assistance of

counsel is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.

7. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A defendant who attacks the adequacy of representation received by him at trial must prove his claim and to the extent that his claim depends on facts not of record it is incumbent on him to make a testimonial record at the trial court level or to move for a new trial.

8. VENUE — CHANGE OF VENUE — CRIMINAL LAW.

A defendant must show a strong community prejudice and extensive and inflammatory publicity under which jurors could not remain impartial, before a change of venue is necessary.

9. VENUE — CRIMINAL LAW.

The prosecution in a criminal case must prove that the crime occurred in Michigan and that the particular circuit court or recorder's court has venue to try the case; where the prosecutor establishes that the crime occurred in Michigan but it is impossible to determine in which county the crime took place, the Attorney General has the authority to designate in which county the case should be tried (MCL 762.3; MSA 28.846).

10. CRIMINAL LAW — DIRECTED VERDICT.

A trial judge, when ruling on a motion for a directed verdict of acquittal, must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

11. APPEAL — JURY INSTRUCTIONS — COURT RULES.

The Court of Appeals should not consider a party's claim that error occurred in the giving of an instruction to the jury unless the party claiming error specifically objected to the instruction before the jury retired to consider a verdict (GCR 1963, 516.2).

12. MOTIONS AND ORDERS — NEW TRIAL.

An objection going to the weight of the evidence may be raised only by a motion for a new trial and a trial court's denial of a motion for a new trial may be reviewed on appeal for abuse of discretion but a trial judge's discretion is not invoked where no such motion is filed in the trial court.

13. Evidence — Criminal Law — Prior Incarceration and Escape.
   Admission of evidence of a criminal defendant's previous incar-
   ceration and attempt to escape from custody does not constitute
   error where the evidence is material to the jury's deliberations
   concerning the defendant's confession which was properly ad-
   mitted.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *George N. Parris,*
Prosecuting Attorney, *Don L. Milbourn,* Chief Ap-
pellate Lawyer, and *Robert J. Berlin,* Assistant
Prosecuting Attorney, for the people.

*Thomas J. McCallum,* for defendant on appeal.

Before: D. C. Riley, P.J., and Cynar and H. R.
Gage,* JJ.

Cynar, J. Defendant appeals as of right from his
conviction for first-degree felony murder, contrary
to MCL 750.316; MSA 28.548. Following a jury
trial, which took place between April 24 and May
2, 1979, defendant received the mandatory sen-
tence of life imprisonment.

On Thursday, January 15, 1976, the victim, 16-
year-old Cynthia Rae Cadieux, ate dinner with her
family at their home in Roseville, Michigan, and
then left to visit a friend. After visiting at the
home of the friend for a short time, Miss Cadieux
left to walk to a nearby drug store at about 8:30
p.m.

On Friday, January 16, 1976, at approximately
1:50 a.m., a passing motorist discovered the vic-
tim's body in the snow on the side of Franklin
Road in Oakland County, Michigan. The body was
nude and a gaping wound, 1-1/4 inches long by 3/8
inch wide was found on the forehead. The police
were summoned to the scene, but a search of the

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

area turned up no tangible physical evidence which would explain the presence of the body.

John Burton, M.D., a forensic pathologist, then chief medical examiner for Oakland County, performed an autopsy upon the victim and testified at trial. The pathologist found discolored marks on the victim's skin above the elbows which in his opinion were caused by the presence of bands used to tie the victim's arms. Various other bruises and scrapes were found on the body. Dr. Burton concluded that the cause of death was a skull fracture and brain contusion due to an injury to the head caused by a blunt instrument.

The pathologist's examination of the victim's vagina revealed that it was dilated, with tears and scratches. He found, based upon a reasonable medical certainty, that these injuries were caused by forced penetration from a penis. An examination of the victim's anus revealed that it too was dilated and contained scratches on the inside. The pathologist found that, based on a reasonable medical certainty, these injuries were caused by the forced penetration of a penis. The pathologist also found evidence of a forced penetration of the victim's mouth. While no sperm was found, Dr. Burton did not find that to be unusual in cases of forced penetration. The pathologist had performed over 22,000 autopsies.

Because of a lack of evidence, the case lay relatively dormant for approximately two years. However, in April, 1976, an event took place which eventually would lead to the defendant's arrest. At that time, Gary Krowl was an inmate at the Michigan state parole camp in Jackson, Michigan. A few days before Krowl was to be paroled, he had a chance meeting with the defendant, an old childhood friend from Roseville. After a brief

discussion, defendant asked Krowl if he could help him obtain clothes he needed to escape from the prison camp. After agreeing to help him procure the needed clothes, Krowl asked defendant why he wanted to leave the parole camp, since it was the best part of the prison system.

Defendant replied, "You don't understand, [I] wasn't about to do a murder for nobody and [I] had to go". Defendant further explained that he and Raymond Heinrich, a mutual friend from Roseville, had picked up a "chick" in Roseville and "had sex with her". Defendant told Krowl that he and Heinrich had picked up the girl near Papa Joe's in Roseville. Defendant related how he "took her ass off" and "Ray punched her up" before they "kicked the bitch out in the snow and she froze her ass off". This incident had taken place a few months prior to the conversation of April, 1976. Defendant wanted to leave the prison system because he had been questioned once concerning the murder and he was afraid that if Ray Heinrich were questioned, defendant would be implicated in the murder. Two weeks after being paroled, Krowl received a phone call from the defendant who stated that he had successfully escaped from prison.

In January, 1978, the second anniversary of the murder, the Roseville police appeared on television, asking anyone with information regarding the crime to come forward. Krowl saw this televised plea for assistance, recalled his conversation with defendant, and went to the police with his information.

On February 6, 1978, Detective Richard Scott of the Roseville Police Department arrested the defendant at an apartment building in Roseville on an escape warrant. At the station, the defendant

was interrogated and told by police that they had enough evidence to charge him with the murder of Cynthia Cadieux. Although the police did not tell the defendant the date of the murder, defendant stated that he could not have committed the crime because he knew where he was on January 15, 1976. When asked if he could help the police on this matter, defendant replied, "Yes, I can help you". He was then asked if the police had the "right people" and defendant replied, "Yes, you got the right people". Defendant admitted to Detective Scott that he drove the car; however, defendant claimed that Ray Heinrich was the only one to hit the girl because that was Heinrich's "bag". Defendant submits nine issues for our determination.

*I. Was reversible error committed at the preliminary examination when the people's witnesses were allowed to testify, subject to further proof of the corpus delicti, as to extrajudicial statements made by defendant?*

Defendant contends that the examining magistrate committed error requiring reversal by allowing testimony concerning inculpatory statements made by the defendant prior to the establishment of the corpus delicti. Michigan law holds that proof of the corpus delicti must be demonstrated independent of a defendant's confession, and that evidence of the confession is inadmissible until the corpus delicti is thus shown. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973). The rule applies equally to the preliminary examination. *People v Juniel,* 62 Mich App 529; 233 NW2d 635 (1975).

The body of Cynthia Cadieux was discovered on January 16, 1976, and an autopsy was thereafter performed by Oakland County Chief Medical Examiner, Dr. John Burton. Dr. Burton subsequently

retired, moved to the State of Washington, and thereafter refused to voluntarily appear at the preliminary examination. Dr. Burton informed the prosecutor that since he did not like to fly in an airplane and that since his 95-year-old mother was in Washington, he would not voluntarily return to Michigan. The people were thus forced to compel the witness to return to Michigan pursuant to the Uniform Reciprocal Act for the Production of Witnesses.[1]

In light of these facts, the examining magistrate decided to proceed as far as possible on the first day of the preliminary examination and to continue the hearings when the presence of Dr. Burton could be secured. The preliminary examination commenced with the people's first two witnesses establishing that the nude and battered body of a young female was found in a snowbank in Oakland County. Ordinarily, the next witness should have been Dr. Burton but, as noted, he was not available. Instead, Gary Krowl testified as to inculpatory statements made by defendant. Defense counsel objected to allowing this testimony until the corpus delicti had been established. The magistrate held that Krowl's testimony would be tentatively received subject to subsequent introduction of proof of the corpus delicti independent of the statements or confession of the defendant. Additionally, the magistrate permitted defense counsel to reserve cross-examination of Krowl until the corpus delicti was established.

Later, the prosecutor asked the magistrate if the testimony of Detective Richard Scott of the Roseville Police Department could be adjourned. Defense counsel objected to the adjournment; he could see no reason for not proceeding. Therefore,

---

[1] MCL 767.91 et seq.; MSA 28.1023(191) et seq.

Detective Scott's testimony was taken subject to the earlier provisions for allowing further cross-examination pending independent proof of the corpus delicti.

The corpus delicti of first-degree murder includes proof: (1) of a death; (2) that such death was caused by a criminal agency or instrumentality; and (3) of the element distinguishing first-degree murder from second-degree murder, here, that the death occurred during the perpetration or attempted perpetration of a rape. See *Allen, supra,* adopting the dissent of Judge (now Justice) LEVIN at 39 Mich App 483, 494; 197 NW2d 874 (1972), and *People v Hawkins,* 80 Mich App 481; 264 NW2d 33 (1978). The underlying corpus delicti does not include the identity of the perpetrator. *Allen, supra,* 505, *People v Randall,* 42 Mich App 187, 189-190; 201 NW2d 292 (1972).

In the instant case, the people made a good faith effort to introduce their case in accordance with the dictates of *Allen, supra.* When the presiding magistrate at the preliminary examination was confronted with the realities of a busy schedule and a recalcitrant witness, he arrived at a fair solution. The prosecution was allowed to proceed with the available witnesses, but their testimony was not to be considered until the corpus delicti was subsequently proven by evidence independant of the inculpatory statements. There was substantial compliance with the dictates of *Allen,* particularly so, since this was a nonjury proceeding. This assignment of error is rejected.

*II. Did the circuit court abuse its discretion in denying defendant's request for substitution of apppointed counsel?*

Defendant maintains that the trial court abused its discretion by denying his request for substitu-

tion of appointed counsel with the result that defendant had to retain his own counsel.

While an indigent defendant is guaranteed the right to be represented by counsel, an accused has no right to have counsel of his own choosing appointed nor does he have the right to have his appointed counsel replaced on a whim. *People v Krist,* 93 Mich App 425; 287 NW2d 251 (1979).

An indigent defendant is not constitutionally entitled to the appointment of an attorney of his choice. *People v Eddington,* 77 Mich App 177; 258 NW2d 183 (1977), *Krist, supra.* Nevertheless, he may be entitled to have his assigned lawyer replaced upon a showing of adequate cause. *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), *People v Bradley,* 54 Mich App 89; 220 NW2d 305 (1974). The decision regarding substitution is entrusted to the trial court's discretion and will not be overturned on appeal absent an abuse of that discretion. *Eddington, supra.*

On April 6, 1978, a hearing was held before the Macomb County Circuit Court pursuant to a motion to withdraw made by attorney Keller, who at the time had been appointed to represent defendant. Mr. Keller indicated that his motion to withdraw was based upon a request by defendant. Keller indicated that the defendant was dissatisfied with his services because he was unable to secure a sodium pentothal test for the defendant and he was unable to secure defendant's removal from the Macomb County jail to the Jackson state prison. The circuit judge, in response to those allegations, unequivocally informed the defendant that a sodium pentothal test was inadmissible and in any event he would not order such a test even pursuant to motion. In regard to the transfer to the Jackson state prison, the trial judge indicated

that such a move was beyond the powers of defense counsel. Finally, the trial court stated that Keller was, in its opinion, one of the most competent defense lawyers in the county. The trial court granted defense counsel's motion to withdraw but indicated that it would not appoint substitute counsel because defendant had failed to show adequate cause for such a change.

Following the court's refusal to appoint substitute counsel, defendant retained private counsel. Because defendant has failed to show an abuse of discretion by the trial court, this assignment of error is dismissed as being without merit.

*III. Did the trial court err in admitting statements defendant made to police?*

Following defendant's arrest on a fugitive warrant, the Roseville police questioned him on four separate occasions between February 6 and 8, 1978. During this period, defendant did not request an attorney because he felt he did not need one. At the conclusion of a *Walker* hearing, *[People v Walker (On Rehearing), 374 Mich 331; 132 NW2d 87 (1975)]*, the court held that the first confession was admissible, the second confession inadmissible because *Miranda* warnings were not given, *[Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966)]*, and the third and fourth confessions inadmissible because of a possible taint of a grant of immunity. The trial judge, in his opinion following the *Walker* hearing, cast doubt on the defendant's credibility during the *Walker* hearing. Defendant then filed with the Court of Appeals a delayed application for leave to appeal. That application was denied on April 19, 1979.

This Court is required to examine the record and make an independent decision when reviewing

a trial court's determination of the voluntariness of a confession. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972), *People v Carl Johnson,* 99 Mich App 547; 297 NW2d 713 (1980), *People v Germain,* 91 Mich App 154; 284 NW2d 260 (1979). However, this Court gives great deference to a trial court's finding of voluntariness following a *Walker* hearing, since the trial court is in the best position to judge the credibility of witnesses. *People v Martin,* 99 Mich App 570; 297 NW2d 718 (1980), *People v Smith,* 80 Mich App 106; 263 NW2d 306 (1977). This Court will not upset a lower court's finding unless it is clearly erroneous. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974), *People v Arthur Burton,* 74 Mich App 150; 253 NW2d 691 (1977).

Some of the relevant factors to be considered in this determination are: "(a) the duration and condition of detention; (b) manifest attitude of the police toward the accused; (c) the physical and mental state of the accused; and (d) diverse pressures which sap or sustain the accused's power of resistance or self-control". *People v Allen,* 8 Mich App 408, 412; 154 NW2d 570 (1967), citing *Culombe v Connecticut,* 367 US 568; 81 S Ct 1860; 6 L Ed 2d 1037 (1961).

The record demonstrates that defendant was advised of his rights both prior to arrest and prior to his interrogation session. The trial court concluded that the defendant voluntarily waived his rights before he confessed his guilt. Following a review of the record, we are not convinced that the trial court clearly erred in its finding.

*IV. Was defendant denied his right to the effective assistance of counsel?*

We find this issue to be without any merit whatsoever.

The Supreme Court, in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), set forth the proper test for review of a claim of ineffective assistance of counsel, noting that:

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.

\* \* \*

"[I]f such 'action that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective'." *Garcia, supra,* 264, 266.

In arriving at the above test, the Supreme Court cited with approval *Beasley v United States,* 491 F2d 687 (CA 6, 1974), and *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969).

In *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), the Court held that a defendant who attacks the adequacy of representation received by him at trial must prove his claim and, to the extent that his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level or to move for a new trial.

Defendant's allegation that he was denied the effective assistance of counsel through the failure of his retained counsel to move for a change of venue is not well founded. In *People v Dixon,* 84 Mich App 675; 270 NW2d 488 (1978), the Court held that a defendant must show a strong community prejudice and extensive and inflammatory publicity, under which jurors could not remain impartial, before a change of venue is necessary. More than mere pretrial publicity is necessary to

require a change of venue. *People v Clay,* 95 Mich App 152; 289 NW2d 888 (1980).

In the present case, defendant's trial began more than three years after the victim's body had been recovered. Defendant failed to establish during voir dire a strong community prejudice or extensive publicity. For those reasons, trial counsel's failure to move for a change of venue will not support a finding of ineffective assistance of counsel.

Defendant next contends that it was error for his counsel to fail to introduce evidence that at the time of the offense he did not own a car. Defendant himself testified at trial that he purchased a 1969 Cougar during the first part of January, 1976, or perhaps as early as Christmas of 1975. The crime occurred on January 15, 1976. Thus, it is apparent that this argument is unfounded and will not support a claim of ineffective assistance of counsel at trial.

Defendant's third alleged claim of error was failure of counsel to search for two witnesses. Defendant does not state who these witnesses are or any of the particulars upon which a rational determination can be made. Because of his failure to make a testimonial record in this regard, this issue will not support a claim of ineffective assistance of counsel. *Ginther, supra.*

Finally, defendant alleges that he received ineffective assistance of counsel through the failure of his attorney to investigate alleged threats made by witness Krowl against defendant's family. Again, defendant has failed to put such testimony in the record despite the fact that his mother testified at trial.

It is noted that the defendant has had five attorneys in this case and found fault with three

of them up to this time. There is no merit to any of defendant's claims of error on this issue.

*V. Was venue properly established pursuant to MCL 762.3; MSA 28.846?*

While defense counsel did make an objection to the introduction of the Attorney General's order, at no time did defense counsel even argue that venue had not been properly established.

The people in each case must prove that the crime occurred in Michigan and that the circuit court has venue to try the case. The only exception to this rule is when the jurisdiction is shown, *i.e.,* the crime occurred in Michigan, but it is impossible to determine in which county the crime took place. In such cases the Attorney General has the authority to designate in which county the case should be tried. MCL 762.3; MSA 28.846, *People v Coapman,* 326 Mich 321; 40 NW2d 167 (1949), *People v Stanek,* 61 Mich App 573; 233 NW2d 89 (1975).

In the instant case, Cynthia Cadieux was last seen alive at about 8:30 p.m. on the evening of January 15, 1976, when she left a friend's house to go to a nearby store in Macomb County. At approximately 1:50 a.m. on the following morning her nude and battered body was discovered some 28 miles away in Oakland County. The time of death was approximated at 11 p.m. While this evidence was sufficient to establish that the crime occurred in Michigan, it was impossible to determine in which county it occurred. Therefore, pursuant to a petition by the Macomb County prosecutor, on March 13, 1978, the Michigan Attorney General designated Macomb County a proper venue.

Venue was properly established pursuant to the above-mentioned statute.

*VI. Did the trial judge err in denying defendant's motion for a directed verdict made at the close of the people's proofs?*

When ruling on a motion for a directed verdict of acquittal, the trial judge must consider the evidence presented by the prosecution up to the time the motion is made, *Garcia, supra,* view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979). This standard was first adopted by the Supreme Court in *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

In the case before us, the 16-year-old victim was last seen alive at approximately 8:30 p.m. on January 15, 1976. At approximately 1:50 a.m., her nude body was discovered in Oakland County, some 28 miles away from her home. The victim's death was caused by a skull fracture, apparently occasioned by a blunt instrument. The victim's anus was dilated and there were scratches on the interior of the anus; the victim's vagina was likewise dilated and had tears and scratches. The chief medical examiner stated that the injuries were compatible with forced penetration by an erect penis. The doctor also found that the victim's hands had been bound behind her back. Additional testimony reveals that the defendant had related to a friend in prison how defendant and an accomplice had picked up a "chick" in Roseville and had sex with her. Testimony also reveals that the defendant and an accomplice had "punched the victim up" before they kicked her out into the snow. Finally, defendant admitted to the police, "You got the right

people" but that the accomplice had done the hitting because hitting was "his bag"

The evidence, viewed in the light most favorable to the prosecution, would justify a reasonable man in concluding that all of the elements of the crime were established beyond a reasonable doubt.

Defendant's second argument, that the evidence connecting defendant with the crime lacks credibility, is a matter for the jury to decide. Therefore, it is submitted that the trial court did not err in denying the defendant's motion for a directed verdict.

*VII. Did the trial court err in its instruction on malice?*

In the instant case, the trial court gave the following instruction on malice:

"Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death and that he did so under circumstances which did not justify, excuse or lessen the crime.

"First degree and second degree murder are the same crime except that first degree murder has one more element, and that additional element is that the death must have occurred as a direct result of the commission of the crime of rape."

GCR 1963, 516.2 provides that a party may not claim error in the giving of a jury instruction unless he objects specifically thereto before the jury retires to consider a verdict. In the present case, defendant did not object to the above-quoted instructions. Thus, in the absence of manifest injustice, this Court did not address this issue.

In *Sandstrom v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979), the United States Supreme Court was confronted with a jury instruc-

tion that "the law presumes that a person intends the ordinary consequences of his voluntary acts". The issue addressed was whether such an instruction violated the Fourteenth Amendment's due process requirement that the state prove every element of a criminal offense beyond a reasonable doubt. See *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). The Court, citing *United States v United States Gypsum Co,* 438 US 422; 98 S Ct 2864; 57 L Ed 2d 854 (1978), held that since the jury may have interpreted the challenged presumption either as conclusive or as shifting the burden of persuasion, the instruction was infirm.

In *People v Wright,* 408 Mich 1; 289 NW2d 1 (1980), the question presented was whether the jury instruction, "unless the testimony satisfies you of something else * * * the law presumes that every man or woman intends the natural, the probable, and the legitimate consequences of his or her own wilful and voluntary act", was reversible error. The Court concluded that the instructions may have been interpreted by the jury as a burden-shifting presumption and therefore were violative of due process.

In the instant case, the trial judge did not instruct the jury that any presumptions or implications relative to malice existed. The trial judge merely instructed the jury that the burden of proof remains on the people at all times and that the defendant has no duty to prove anything. Further, the judge instructed the jurors that in order to find malice they would have to find that defendant intended to kill or that he created a very high degree of risk of death with the knowledge that death would be a likely result and that defendant did so "under circumstances which did

not justify, excuse or lessen the crime". The previously quoted language, contends appellant, amounts to reversible error. The instruction does not include or suggest presumptive language. This assignment of error is without merit.

*VIII. Was the verdict contrary to the great weight of the evidence?*

Defendant acknowledges in his brief that he failed to move for a new trial in the trial court. He nonetheless contends that this Court should address the issue raised herein. However, this Court has repeatedly said that an objection going to the weight of the evidence is a discretionary matter and that it must be raised by a motion for new trial. *People v Mattison,* 26 Mich App 453; 182 NW2d 604 (1970). Defendant cites several Court of Appeals cases for the proposition that appellate consideration of objections going to the great weight of the evidence may be given in the absence of a motion for a new trial. But even these cases expressly reject consideration of a challenge to the great weight of the evidence where there is a failure to move the trial court for a new trial. See *People v Robert Jackson,* 41 Mich App 530, 533; 200 NW2d 465 (1972). Because appellate review of this issue involves a review of the trial court's denial of a motion for a new trial and because defendant has failed to make such a motion, this Court is constrained to deny appellate consideration of the issue.

*IX. Where the defendant confesses his participation in a murder to his cellmate in prison in order to gain the assistance of the cellmate in an escape attempt, are the circumstances of the confession admissible at trial to assist the jury in deciding the weight and credibility of the confession?*

In his opening statement, the prosecuting attor-

ney mentioned that one of the witnesses that he intended to call, Gary Krowl, would testify as to certain admissions that defendant made to him while they were both incarcerated in Jackson prison. Subsequently, during the prosecution's direct examination of witness Krowl, it was established that Krowl and defendant were childhood friends and that they met in April, 1976, at a Michigan state parole camp in Jackson, where they were both inmates. During this meeting the defendant requested that Krowl assist him in escaping from the prison camp. Defendant stated that he and Raymond Heinrich had "picked up a chick * * * and had sex with her". Defendant explained to Krowl that he had to escape because he feared that Ray Heinrich would be questioned by the police and place the blame for the murder on the defendant. Moreover, defendant had formulated a plan whereby he could use the murder information as an "ace in the hole" against Heinrich in the event defendant was caught escaping from prison.

Reference to prison was made again during the prosecutor's closing argument.

Gary Krowl, a prosecution witness, testified that the defendant made specific admissions to him concerning the abduction, rape and murder of Cynthia Cadieux. These admissions were made in response to an inquiry by Krowl as to why defendant would want to escape from a parole farm, the "softest" part of the prison system. Essentially, defendant responded that his need to escape from prison was occasioned by a perceived fear that defendant's accomplice in the crime would divulge his participation. During Krowl's testimony the attendant circumstances of his conversation with defendant, including defendant's desire to escape

from prison, were disclosed to the jury. Certainly, the attendant facts and circumstances of the conversation wherein the admissions were made were relevant in assisting the trier of fact's assessment of the credibility of the witness.

It should first be noted that defendant is incorrect in stating that there was an objection to the reference to the previous incarceration. No such objection was made and the testimony as to the incarceration was admitted without challenge. Following this testimony an objection was lodged but not as to the reference to the incarceration. The objection was to any reference as to the reason why defendant was previously incarcerated and as to any reference to the escape. The prosecutor agreed not to mention the crime for which defendant was incarcerated and the trial court allowed the escape testimony because it was an integral part of the confession. Thus, at the outset defendant is attempting to raise for the first time on appeal an issue which was never raised at trial or by a motion for a new trial and thus is not preserved for appellate review.

In any event the admission of the reference to defendant's previous incarceration was not error under the circumstances of this case. In *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908; 1 ALR3d 1205 (1964), the United States Supreme Court discussed the competing methods governing the admissibility of evidence of confessions and determined that the "orthodox" rule required the judge to determine the issue of the voluntariness of the confession and, if found voluntary, to submit the confession to the jury to determine the weight and credibility of the confession.

In *Walker, supra,* the Michigan Supreme Court specifically adopted the holding of the United

States Supreme Court in *Jackson, supra,* as it pertained to the "Orthodox" rule. Thus, the duty imposed upon the jury in the instant case was to determine whether the confession was actually made and what weight, if any, should be given to the confession after hearing *all* of the facts surrounding the confession. The position of defendant on appeal, which is obviously contrary to his position at trial, is that it was incumbent upon the trial court to sanitize evidence of the confession and withhold from the jury evidence of the circumstances surrounding the confession. It is the theory of the defendant that witness Krowl should only have been allowed to state that defendant had confessed to him and to relate the contents of that confession. We do not agree. The jury was charged with determining the weight and credibility of the confession. In order to do this the jury had to be placed in the position of knowing all the circumstances surrounding the confession.

In support of his position defendant relies upon a number of cases including *People v Greenway,* 365 Mich 547; 114 NW2d 188 (1962), *People v Camel,* 11 Mich App 219; 160 NW2d 790 (1968), and *People v Matthews,* 17 Mich App 48; 169 NW2d 138 (1969). However, each of those cases is distinguishable from the instant case in that there was no reason other than potential prejudice to elicit the information. In each case the fact of previous incarceration was totally irrelevant to the case being tried. Likewise, in the instant case the previous incarceration would have been irrelevant had defendant not confessed to his cellmate during the incarceration in an attempt to gain assistance for an escape. But since he did, those circumstances became crucial to the jury's deliberations as to the weight and sufficiency of the confession.

In *People v Fleish,* 321 Mich 443; 32 NW2d 700 (1948), the Michigan Supreme Court held that evidence of former convictions is admissible where such evidence is material and relevant to the issues being tried. The *Fleish* Court permitted testimony that the prosecution's witness had met the defendants while in jail since the testimony was offered to show the relationship between the parties. The Supreme Court held that such testimony was competent and material to a full and fair presentation of the people's case.

As discussed above, the testimony concerning the previous incarceration and escape was material to the jury's deliberations concerning the confession. Without the testimony the confession would be presented without any foundation so as to appear to be in a vacuum. As in *Fleish,* the testimony was material to the relationship that existed between the witness and the defendant and consequently it was admissible. The admissibility of this testimony was only for a specific purpose and the trial court correctly instructed the jury on that point.

This assignment of error is dismissed as being without merit.

Affirmed.